**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Howard C. MACHEN, Defendant-
Appellant.**

**No. 16716.**

United States Court of Appeals,
Seventh Circuit.

Aug. 11, 1970.

———————

Anna R. Lavin, Chicago, Ill., for defendant-appellant.

William J. Bauer, U. S. Atty., Thomas A. Foran, U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Michael B. Nash, Asst. U. S. Attys., of counsel.

Before FAIRCHILD and KERNER, Circuit Judges, and DOYLE, District Judge.[1]

JAMES E. DOYLE, District Judge.

A jury returned a verdict finding defendant Machen guilty of aiding, abetting, counseling, commanding, inducing and procuring the possession by defendants Bock and Dobbins of goods stolen from interstate commerce, in violation of 18 U.S.C. § 659. Dobbins and Bock were found guilty of the principal offense of possession. Judgments were entered against all three defendants and sentences were imposed. Dobbins and Bock have abandoned their appeals. We are presented with the appeal by Mach-

1. District Judge Doyle of the Western District of Wisconsin is sitting by designation.

en alone (he will be referred to herein as "the defendant").

The indictment charged that on August 7, 1966, at Joliet, Illinois, Dobbins and Bock were in possession of certain stolen goods: some drums of nickel pellets, some metal house mailboxes, and some cartons of assorted General Electric Company products.

■ Viewed most favorably to the government, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the evidence with respect to August 7, 1966, is as follows:

At about 3:00 p. m. agents of the Federal Bureau of Investigation observed a truck-tractor and trailer backing into a warehouse shed at 326 North Maple in Joliet. The shed had been under surveillance on several previous days.

The agents, pursuant to a search warrant, entered the shed shortly after the truck had entered it. They observed Dobbins maneuvering this truck next to a Tucker Freight Line tractor-trailer unit. The trailer of the Tucker unit was backed against a flatbed trailer at the rear of the shed. On the flatbed trailer were several two-wheel hand-trucks. The Tucker trailer contained 88 drums of nickel pellets. During a previous surveillance the agents had observed that a tarpaulin fastened with ropes covered the Tucker trailer. Now the ropes were loose and the tarpaulin had been moved two to three feet along the trailer. The trailer doors of the unit backed into the shed by Dobbins were open and fastened on the outside of the trailer. Both this tractor and this trailer bore license plates which were later shown to have been issued to defendant Machen. On the side of the tractor was lettered "H. Machen, Phillipsburg, New Jersey."

After the agents entered the shed, they found Dobbins in the cab of the unit he had been backing in. Bock was found at the rear of this unit. Both men were placed under arrest. Bock was wearing work clothes and work gloves. Dobbins was searched later at an FBI office, at which time a receipt from the Ford Motor Credit Company was found on his person. The receipt indicated a payment by Dobbins of $926.58 for the account of "Howard Machen" and was dated May 12, 1966.

Subsequent to the arrest, an agent of the FBI conducted a search of the shed. He found 88 drums of nickel pellets, 394 cartons of metal house mailboxes and 47 cartons of General Electric products. All of these items were shown to have been stolen from interstate commerce on various dates: the nickel pellets on July 21, 1966; the mailboxes on January 16, 1966; and the General Electric products on or about March 14, 1966.

In a pile of rubbish in the shed the agent found a packing slip of the Max Factor Company. Evidence was introduced against defendant which showed that the packing slip was identical to the kind of packing slip found in a stolen shipment of Max Factor products on February 10, 1966, near Clayton, Indiana. That stolen shipment was found in a tractor-trailer unit belonging to defendant.

The evidence just recited is insufficient to support the conviction. There is no proof that the defendant was in Joliet, or near it, on the day in question; that he had any part in the events which resulted in the presence of the stolen goods in the Joliet shed; that he had any part in the presence of the Tucker trailer and tractor (which then contained the stolen nickel pellets) in the shed; or that he had any part in the presence of his own tractor and trailer there. Without such proof the record will not support the inference that the defendant Machen knew that the nickel pellets (and the other stolen goods in the shed) had been stolen, or that they were then and there in the possession of Dobbins and Bock, or that they were about to be transferred from the Tucker trailer to defendant's trailer.

The evidence that Dobbins had made a payment for defendant Machen's account

with the Ford Motor Credit Company on May 12, 1966, supports the inferences that the two knew each other and had some financial dealings with one another; nothing more.

The critical gap in the evidence thus far reviewed arises from the peculiarities inherent in the concept of aiding and abetting possession, as contrasted with aiding and abetting a theft or aiding and abetting the subsequent disposition of stolen goods. One can conceive of a situation in which A is in knowing possession of stolen goods and in which B, aware that the goods are stolen and that they are in A's knowing possession, gives A a key to a building in which to store them. Whether this would constitute aiding and abetting A's possession or some other offense, we need not decide. Nothing approaching this situation is revealed by the evidence thus far reviewed. There is nothing to show that defendant Machen played any part in the chain of events by which Dobbins and Bock came into possession of the stolen goods in the Joliet shed, or that defendant Machen was facilitating their continuing possession of the goods at the time and place in question.

Thus the verdict can be sustained, if at all, only by resort to evidence which was received at trial, over objection, with respect to the Max Factor shipment. It follows that if the Max Factor evidence was improperly received, the error was prejudicial and reversal of the conviction is required.

■ The evidence pertaining to the Max Factor shipment is this. On January 17, 1966, a Western Gillette trailer loaded with Max Factor products was discovered to be missing from the Western Gillette trailer yard in Chicago. On February 10, 1966, a tractor-trailer unit was discovered near Clayton, Indiana. Inside the trailer were Max Factor products identical to those stolen on January 17, 1966. A license plate number on the tractor was found to be registered in defendant's name (and was identical to the license plate number found on defendant's tractor during the August 7, 1966,

raid in Joliet). The number of cartons of Max Factor products in the trailer (there were several thousand) was only about a dozen less than the number which had been stolen on January 17, 1966. The packing slips in these cartons were identical to the slip later found in the Joliet warehouse; however, the evidence showed that such packing slips were included in hundreds of Max Factor shipments all over the country. There was nothing specific about the slip found in the Joliet warehouse to connect it with the Max Factor shipment discovered earlier in Clayton.

Defendant and one Theodore Ziemba were arrested on February 10, 1966, while eating lunch in a motel restaurant near Clayton, Indiana. Defendant's truck containing the stolen Max Factor shipment was located about a quarter of a mile from the motel. However, there is no evidence that defendant was convicted of any offense in connection with the stolen Max Factor shipment.

We conclude that the Max Factor evidence was improperly received.

■ Occasionally evidence which is probative of the offense being tried is also and inevitably probative of an earlier offense. This by-product of the evidence, so to speak, may be prejudicial to the defendant. The degree of prejudice thus arising by indirection must be balanced against the importance of the evidence to the issue being tried.

This is not the phenomenon we encounter here. We are not presented with proof of a pattern of activity in which the August 7, 1966, events at Joliet are in the mainstream, but there is an indirect spill-over into the February 10, 1966, events at Clayton. On the contrary, this is a *tour de force* in which the proof, such as it is, on the Clayton incident is said to spill over into the Joliet incident. The only possible justification for permitting such a spillover in this case would be that the Clayton evidence is strongly probative of guilty knowledge in the Joliet situation. See *United States v. Hoffman*, 415 F.2d 14,

18 (7th Cir. 1969), cert. den., 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 423. However, we do not have a situation in which it has been proved by other evidence that the defendant Machen was aware that Dobbins and Bock were in possession of certain nickel pellets, and in which evidence of a prior similar offense is then received as probative that the defendant knew the nickel pellets had been stolen. The evidence of a prior and allegedly similar offense is said to be probative both that the defendant knew that Dobbins and Bock were in possession of the pellets and that he knew that the pellets had been stolen. To put it otherwise, the evidence of the prior and allegedly similar offense is offered for the gross proposition that proof that one offense has been committed is proof that another later offense has been committed.

■ Assuming that such a gross purpose may ever be thus served, strict standards must be met. These would include the requirements that the two incidents be intimately linked in time, nature, and method, and perhaps in place and in the identity of the participants. Also, proof that the defendant was guilty of the prior crime would be required to be crisp, concise, and persuasive. See Kraft v. United States, 238 F.2d 794, 802–803 (8th Cir. 1956).

In the present case, none of these requirements has been met. The goods referred to in the indictment had been stolen in January, 1966; March, 1966; and July, 1966. Dobbins and Bock were found in possession in Joliet, Illinois, in August, 1966. The Max Factor shipment had been stolen in January, 1966; it had been found in February, in a trailer owned by the defendant, about a quarter of a mile from a motel near Clayton, Indiana, at which the defendant was found having his lunch. There is no suggestion that Dobbins and Bock had any connection with the Max Factor shipment. The presence of a Max Factor packing slip in a rubbish pile in the Joliet shed on August 7, 1966, is not probative that defendant Machen was involved in either the Max Factor shipment episode in February, 1966, or the Joliet incident in August, 1966, in the absence of any distinctive markings on the packing slip. There is no evidence that the defendant was convicted of any offense as to the Max Factor shipment.

Under these circumstances, the probative value of the evidence of the prior incident is slight indeed, and the danger of prejudice to the defendant is high. The danger is that a jury will find a defendant guilty of the later offense, not because it considers the evidence of the prior offense probative of the later offense, but simply because it is persuaded that he is guilty of the earlier offense.

For the reasons stated, we hold that evidence of the Max Factor shipment was erroneously received, and that the error was prejudicial to the defendant.

The judgment appealed from is reversed and the case is remanded to the trial court with directions to grant a new trial.