## MELVIN ALFONZO CROSS v. STATE OF MARYLAND

[No. 84, September Term, 1977.]

*Decided May 4, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Stephen B. Caplis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

The petitioner, Melvin A. Cross, is before this Court by way of certiorari to contest the decision of the Court of Special Appeals in *Cross v. State,* 36 Md. App. 502, 374 A. 2d 620 (1977), which affirmed the judgment of the Circuit Court for Howard County entered on a jury verdict finding him guilty of grand larceny. Since we agree with the petitioner that (i) the evidence introduced at the trial tending to associate him with another crime committed the same day was improperly placed before the jury, and (ii) other evidence purporting to show that Cross was in possession of goods stolen in the

burglary was inadequate to raise an inference that he was the thief, we will reverse the judgment and remand the case for a new trial.

The events which are the basis of this criminal prosecution occurred between the fifteenth and eighteenth of February, 1976.[1] On Sunday the fifteenth, between 4:00 and 5:00 p.m., the Howard County home of Margaret and Robert Fridell was burglarized. At the time of this trespass two neighbors noticed a light blue car parked near the residence, but gave no additional information concerning the vehicle and described the occupants only as "two persons" who were taking things from the house and putting them in the automobile.[2] Among the items reported missing was Mrs. Fridell's diamond engagement ring. Three days later, while investigating a break-in which had occurred at the home of Mr. Hugh Buffington in Catonsville, about an hour after and several miles from the Fridell burglary, the Baltimore County police discovered Mrs. Fridell's ring on the front seat of petitioner's blue 1967 Chevrolet. The car was at the time located in a storage yard in Prince George's County, having been placed there as a result of its impoundment by local police after being involved in an accident in that county on the evening of Monday, February 16.

To bolster its case against Cross charging grand larceny and related offenses pertaining to the Fridell burglary, the State sought at the trial to introduce evidence concerning his whereabouts immediately before and after the break-in at the

---

1. Although the case has been submitted to this Court by the parties on an agreed statement of facts, pursuant to Maryland Rule 828 g, the truncated nature of the statement has made it necessary for us to supplement it by examining and drawing upon the trial record in order to explore the merits of this appeal. While we encourage the use of agreed statements under the rule to simplify the appellate process and will rely solely on such statements in most instances, we caution counsel against inadequate stipulation which fails to bring the full impact of the contentions of the parties to the Court's notice.

2. As was acknowledged by the parties at oral argument in this Court, the statement of the Court of Special Appeals that "[n]eighbors of the Fridells had testified that the two *white male burglars operated from a blue Chevrolet,*" Cross v. State, 36 Md. App. 502, 521, 374 A. 2d 620, 632 (1977) (emphasis added), is without support in the record. There is nowhere in the proceedings any evidence which indicates the race or physical characteristics of the two Fridell home burglars, or the make or model of the blue car used by them; nor is there any definitive testimony as to the burglars' sex.

Fridell home. Cindy Brosenne, an employee of a liquor store located two and one-half to three miles from the Fridell residence, identified Cross as one of two black men who purchased a six-pack of Michelob beer at the store between 3:30 and 4:30 p.m. on the fifteenth. The State was also allowed to present the testimony of Mr. Buffington concerning the burglary of his Catonsville home at approximately 6:30 p.m. that same day. This witness, over petitioner's objection, was permitted to testify that upon his return home from a two-hour absence he found a blue 1967 Chevrolet parked in his driveway "facing out"; that after making a mental note of the license plate number he alighted from his car, only to discover that his north screen doors had been torn down; that he immediately went to a neighbor's house and called the Baltimore County police; and that when he returned to his home, the witness found that the blue car, whose means of exit via the driveway had been blocked by his own car, had, as evidenced by tire tracks, been driven away across his front lawn. At no time did Mr. Buffington observe the occupant or occupants of the blue car. Although this witness testified he had shown the tire tracks left by the burglars' car to the police when they first arrived at around 6:45 p.m., some four hours later while examining the ground around the house the officers discovered a Michelob beer bottle, which had not previously been observed by anyone that evening. The bottle was found lying in the tire tracks about thirty or forty feet from the street, and had not been run over by the fleeing vehicle. Although the license tag number Mr. Buffington gave the police when they first arrived was not the tag number of Cross' vehicle,[3] that information, together with the

---

3. At trial, Mr. Buffington testified that when the police arrived he told them the license number had the letters D-P-S or D-S-P and the numbers 211 or another number which contained two consecutive ones. The police in their report recorded that Mr. Buffington had told them the license number was either D-S-P 112 or D-S-P 111 or A-S-P and the same combination of numbers. However, Cross' actual tag number was D-S-P 411. The Court of Special Appeals nonetheless stated in its opinion that Mr. Buffington "unequivocally identif[ied] the appellant's automobile, both by general description and by specific license tag number." 36 Md. App. at 521, 374 A. 2d at 631. Since it is clear from the record that this witness did *not* give police the correct number of Cross' license, his identification of the automobile can hardly be said to be "unequivocal."

Likewise we are constrained to observe that the court's statement that Mr.

description of the car as being a blue Chevrolet, eventually led the police to petitioner's automobile, which they found at the storage yard in Prince George's County.

In his defense, the petitioner produced as a witness the filling station operator, J. Robert Peacock, who had towed Cross' vehicle from the place where the accident occurred. Mr. Peacock testified that he was summoned to the scene by the police and thereafter at their request towed a faded blue 1967 Chevrolet back to the Bowie gas station where he worked. He stated that although he had not observed Cross at the accident scene, approximately one to two hours later the petitioner arrived at the station accompanied by friends; he displayed a personal property release document from the police, took some items from the interior and trunk of the car, and then departed in another automobile. Mr. Peacock also testified that before he began the towing operation he entered the car to straighten the wheels and put the transmission in neutral, but, it being dark, noticed nothing on the front seat. Further, this witness was not sure if the station had the keys to the wrecked car but testified that he did not lock it upon arriving at the station because the business was open twenty-four hours daily. The vehicle was later towed five miles to a storage lot where, on February 18, the previously mentioned discovery of the ring by the Baltimore County police occurred. Cross did not testify and offered no explanation of how Mrs. Fridell's engagement ring happened to be in his car; however, he did call his wife to the stand and she testified that on the day and at about the time of the Fridell burglary, her husband was with her in Hagerstown, Maryland.

On this evidence, the jury found the petitioner guilty of both grand larceny and receiving stolen goods, but the State nolle prossed the latter conviction after the verdict was rendered in an attempt to avoid leaving in existence incon-

---

Buffington "found a Michelob beer bottle lying on his lawn, after the strange car drove away," *id.* at 520 [631],\ may give an erroneous flavor to that witness' testimony. The record shows, as we have noted in the text, that the bottle was found in the tire tracks only thirty or forty feet from the street some four hours after the burglary occurred, and it had not been run over by the car.

sistent verdicts.[4] *See Bell v. State,* 220 Md. 75, 80-81, 150 A. 2d 908, 911 (1959); *Heinze v. State,* 184 Md. 613, 617, 42 A. 2d 128, 130 (1945).

A mere cursory review of the case law relating to the issue which is the subject of the petitioner's first contention of error — the trial court's admission of evidence of another crime — readily reveals that there are few principles of American criminal jurisprudence more universally accepted than the rule that evidence which tends to show that the accused committed another crime independent of that for which he is on trial, even one of the same type, is inadmissible. The law of this State is fully in accord. *E.g., McKnight v. State,* 280 Md. 604, 612, 375 A. 2d 551, 556 (1977); *Ross v. State,* 276 Md. 664, 669, 350 A. 2d 680, 684 (1976); *Harrison v. State,* 276 Md. 122, 155-56, 345 A. 2d 830, 848-49 (1975). Yet, as with many firmly established legal principles, there are exceptions which at times appear to swallow the rule. In the instance of the exclusory rule pertaining to other crimes, exceptions have been recognized because of the desire of the courts to admit evidence which is "substantially relevant for some other purpose than to show a probability that [the defendant] committed the crime on trial because he is a man of criminal character." *McCormick's Handbook of the Law of Evidence* § 190, at 447 (2d ed. 1972). The well-established exceptions to the rule in Maryland were recently chronicled by Judge Levine for this Court in *Ross v. State, supra*:

> [E]vidence of other crimes may be admitted when it tends to establish (1) motive, (2) intent, (3) absence of mistake, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the

---

4. In his appeal to the Court of Special Appeals, the petitioner raised three additional grounds for reversal: the inconsistency of the jury's verdicts of both larceny and receiving stolen goods; the erroneous admission of the testimony of the liquor store checker, Cindy Brosenne; and the inadmissibility of an in-court identification of petitioner by Miss Brosenne. 36 Md. App. at 503-04, 374 A. 2d at 623. Cross has not challenged the decision of the Court of Special Appeals rejecting these three claims of error, and since those portions of the court's opinion are thus not before us for consideration, we are prevented from expressing our views as to their correctness.

other, and (5) the identity of the person charged with the commission of a crime on trial.. Additional exceptions have also been recognized: When the several offenses are so connected in point of time or circumstances that one cannot be fully shown without proving the other, and to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial; and to prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. [276 Md. at 669-70, 350 A. 2d at 684 (citations omitted).]

In many instances, the breadth of these exceptions will present the prosecution with little difficulty in "pigeonholing" the evidence within one of them. But it should be remembered that, though the evidence may fall within one or more of the exceptions, the trial judge still possesses discretion as to whether it should be received. In the judicious determination of this issue he should carefully weigh the necessity for and probativeness of the evidence concerning the collateral criminal act against the untoward prejudice which is likely to be the consequence of its admission. *Harris v. United States,* 366 A. 2d 461, 463-64 (D.C. 1976); *see McKnight v. State, supra* at 612-13 [556]. *See generally McCormick on Evidence, supra,* § 190, at 453-54. In some cases, this may require that evidence of the criminal actions of the defendant be totally excluded; in others, admission of portions or all of the evidence of the defendant's specific criminal actions may be permissible.

In its opinion, the Court of Special Appeals discussed two of the exceptions enumerated in *Ross,* though without citing that case: (1) that the evidence of the Buffington burglary was admissible on the basis that it established a "common scheme or plan" — the ground upon which the State relied in urging its admission at trial and upon which the trial court received it, and (2) that it was admissible as establishing the "identity" of the petitioner.[5] The Court of Special Appeals

5. The Court of Special Appeals summarily rejected the applicability of the motive, intent, and absence of mistake exceptions, and the State does not

determined that the evidence was not admissible as establishing a common scheme or plan, a conclusion with which we agree, though not for the reasons, as we read that court's opinion, assigned by it. The court said:

> Nor can we agree with the State that the Buffington crime tends to establish "a common scheme or plan." The mere practice of backing a getaway car up to a premises to be burglarized does not, in our judgment, constitute so unusual a *modus operandi* that it could be labeled the "signature" of a particular criminal so as to establish his identity. [36 Md. App. at 521, 374 A. 2d at 631.]

In so stating the court appears to have confused the exceptions involved.

As a general rule, in order to gain the admission of evidence of other criminal acts under the common scheme or plan exception it is necessary that the crimes, including the crime charged, so relate to each other that proof of one tends to establish the other. *Westcoat v. State,* 231 Md. 364, 368, 190 A. 2d 544, 546 (1963); *Wilson v. State,* 181 Md. 1, 3, 26 A. 2d 770, 772 (1942); *see Young v. State,* 152 Md. 89, 91-92, 136 A. 46, 47 (1927). Moreover, there must be "not merely a similarity in the results, but *such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.*" 2 J. Wigmore, *Evidence* § 304, at 202 (3d ed. 1940) (emphasis in original). The concurrence of common features under this exception, however, must be more than simply a manner of operation, which is possessed to some extent by most criminal recidivists. A method of operation is not, by itself, a common scheme, but merely a repetitive pattern. *People v. Fiore,* 34 N.Y.2d 81, 312 N.E.2d 174, 178, 356 N.Y.S.2d 38, 44 (1974). Thus, evidence of other crimes can be introduced under the common scheme exception only when the relationship between the time, place, circumstances or parties involved in the crimes is such that the uncharged

contend, nor could it, that these or the remaining exceptions set out in *Ross* are applicable in this case.

crime or crimes "support the inference that there exists a single inseparable plan encompassing both the charged and uncharged crimes, typically, but not exclusively, embracing uncharged crimes committed in order to effect the primary crime for which the accused has been indicted." 312 N.E.2d at 177, 356 N.Y.S.2d at 42-43. The evidence in this case, which indicates only that a blue car was seen in front of two residences where break-ins occurred, is clearly inadequate to show any kind of systematic scheme or plan sufficient to allow admission of the evidence of the other crime. *See United States v. Carter,* 475 F. 2d 349, 351 (D.C. Cir. 1973) (per curiam) (evidence that individual wore fur hat and coat when perpetrating armed robberies on two separate occasions insufficient to show common scheme or plan). The language used by the Court of Special Appeals, as we read that court's opinion, to describe the common scheme or plan exception in fact describes the "handiwork" or "signature" exception discussed in *McKnight v. State,* 280 Md. 604, 613, 375 A. 2d 551, 556 (1977), and at times referred to as the "modus operandi" form of the identity exception. *See* note 6 *infra.* The evidence sought to be admitted here obviously does not meet the requirements of that exception.

Having thus concluded that the evidence relating to the Buffington burglary was not admissible as establishing a common scheme or plan, we now consider and reject the determination by the Court of Special Appeals that it was nevertheless admissible as tending to establish the petitioner's identity, the fifth exception we noted in *Ross.* 276 Md. at 669-70, 350 A. 2d at 684. In stating our reasons for this conclusion we call attention to the fact that, as pointed out in Professor McCormick's treatise on evidence, "a need for proving identity is not ordinarily of itself a ticket of admission, but ... the evidence will usually follow, as an intermediate channel, some one or more of the other [exceptions]." *McCormick's Handbook of the Law of Evidence* § 190, at 451 (2d ed. 1972). A reading of the many cases on the identity exception reveals a dearth of analysis which, in turn, only serves to highlight this exception's amorphous nature. One explanation of this ambiguity is given

by Wigmore when he says: "That the accused planned the act, had a motive for the act, bore traces of the act, and so forth, are all merely 'identifying' facts, because the real guilty person also must have planned, had a motive, borne traces, and the like." 2 J. Wigmore, *Evidence* § 410, at 384 (3d ed. 1940). Whatever the reason, many courts appear to have used the identity exception as a sort of catch-all clause which is mixed into other exceptions or delineated separately depending on the needs of that court in a given case.

Having studied the authorities, we conclude that perhaps the most useful analysis of the identity exception and its scope is contained in Underhill's treatise on criminal evidence, in which it is stated that evidence of other offenses may be received under the identity exception if it shows any of the following:

(a) the defendant's presence at the scene or in the locality of the crime on trial;

(b) that the defendant was a member of an organization whose purpose was to commit crimes similar to the one on trial;

(c) the defendant's identity from a handwriting exemplar, "mug shot," or fingerprint record from a prior arrest, or his identity through a ballistics test;

(d) the defendant's identity from a remark made by him;

(e) the defendant's prior theft of a gun, car or other object used in the offense on trial;

(f) that the defendant was found in possession of articles taken from the victim of the crime on trial;

(g) that the defendant had on another occasion used the same alias or the same confederate as was used by the perpetrator of the present crime;

(h) that a peculiar *modus operandi* used by the defendant on another occasion was used by the perpetrator of the crime on trial; [6]

---

6. We recognize that modus operandi, which Underhill makes a part of the identity exception, was delineated separately in our opinion in Ross v. State, 276 Md. 664, 670, 350 A. 2d 680, 684 (1976), where we stated that evidence of "other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused" was admissible. As is noted

(i) that on another occasion the defendant was wearing the clothing worn by or was using certain objects used by the perpetrator of the crime at the time it was committed;

(j) that the witness' view of the defendant at the other crime enabled him to identify the defendant as the person who committed the crime on trial. [P. Herrick, 1 *Underhill's Criminal Evidence* § 210, at 637 (6th ed. 1973 & 1977 Cum. Supp.) (footnotes omitted).]

Although the State contends that the evidence was admissible as demonstrating Cross' presence in the locality of the Fridell burglary — and thus his identity as the perpetrator — the argument fails for the simple reason that before evidence of another crime may be admitted, the accused's involvement in the uncharged crime must be established. The question then arises as to the standard of proof which the State is required to meet in demonstrating such involvement. In this regard, we would agree with those courts which have held that in order to be admissible for the limited purposes enumerated in the appropriate exception, such evidence must be clear and convincing to the trial judge.[7] *E.g., United States v. Herzberg,* 558 F. 2d 1219, 1224 (5th Cir.) ("plain, clear and convincing"), *cert. denied,* 434 U. S. 930, 98 S. Ct. 417 (1977); *United States v. Machen,* 430 F. 2d 523, 526 (7th Cir. 1970) ("crisp, concise, and persuasive"); *State v. Titworth,* Minn., 255 N.W.2d 241, 244-45 & n. 1 (1977) ("clear and convincing"). *But see Ernster v. State,* 165 Tex. Crim. 422, 308 S.W.2d 33, 34 (Crim. App. 1957) (other

in McCormick's treatise on evidence, the modus operandi or "distinctive device" exception is often stated separately from the identity exception, *McCormick's Handbook of the Law of Evidence* § 190, at 451 (2d ed. 1972); however, we observe that this difference in treatment is unimportant so long as the concept is properly analyzed.

7. The preferred method for submitting any evidence of other crimes to the court during trial would be by way of a proffer to the trial judge outside the presence or hearing of the jury. Such a proffer not only protects the jury from immediate prejudice, but also allows the trial judge to determine whether there is any way to limit the prejudicial aspects of the evidence while retaining its probative character and whether the evidence should properly be introduced at that time. *See* United States v. Bailey, 505 F. 2d 417, 420 (D.C. Cir. 1974), *cert. denied,* 420 U. S. 961 (1975).

crime must be proved beyond a reasonable doubt). It should be added that such evidence may be circumstantial. *State v. Titworth, supra* at 245.

In this case, one would be hard put to urge that the evidence of the petitioner's involvement in the Buffington break-in was "clear and convincing"; in fact, it was so deficient that it would not even suffice to create a jury issue were Cross being tried for any crime associated with the Buffington incident.[8] The only evidence which in any way purports to link Cross to the crime scene is Mr. Buffington's description of a blue Chevrolet parked in his home driveway, his recollection of its license plate number, and the Michelob beer bottle found in the tire tracks on his front yard. As for Mr. Buffington's description of the blue car and its license plate, the evidence is insufficient to show the petitioner was the vehicle's owner; even assuming that he was, absent a further showing that he was the driver, a passenger, or otherwise at the scene, the evidence would be insufficient to authorize Cross' conviction for the Buffington burglary. *See Thomas v. State,* 277 Md. 314, 325-26, 353 A. 2d 256, 262-63 (1976) (evidence that defendant found asleep in auto parked on shoulder of road exhibited signs of intoxication when awakened insufficient to support conviction of driving or attempting to drive while impaired); *Luker v. State,* 256 Ark. 687, 509 S.W.2d 806, 807-08 (1974) (evidence insufficient since no showing defendant was driving his truck even though truck was at scene of burglary); *People v. Hildebrandt,* 308 N. Y. 397, 126 N.E.2d 377, 378-79 (1955) (proof obtained through "phototraffic camera" showing defendant's car was speeding insufficient to support traffic conviction because no evidence defendant was driving). As for the beer bottle, there is no evidence it was one of those in the six-pack Cross bought from Cindy Brosenne. Furthermore, there was nothing unique about the bottle — found several hours after the break-in — and there is significance in the fact that it had not been run over although it was found lying in the tire track left by the fleeing blue automobile. The beer bottle evidence simply

8. Although it is of no significance to our decision on this issue, the record indicates that the grand jury declined to charge Cross with the Buffington burglary.

established no link between Cross and the Buffington burglary. *See United States v. Machen, supra,* 430 F. 2d at 524 (similarity between packing slips on stolen cosmetics found in defendant's truck and packing slip discovered in shed with goods stolen in second theft insufficient to show defendant's involvement in second theft). Because there is no probative evidence in the record placing petitioner at the Buffington home on the afternoon of the fifteenth, the evidence concerning the break-in there should not have been admitted.[9] Moreover, in light of the highly prejudicial impact of revealing to the jury facts concerning the uncharged crime, "there is at least a reasonable possibility that the improper testimony of prior criminal conduct contributed to the conviction," *Ross v. State,* 276 Md. 664, 674, 350 A. 2d 680, 687 (1976), and its admission thus cannot be said to constitute harmless error.

Turning to the petitioner's second contention of error, we find that the Court of Special Appeals was likewise incorrect when it ruled that the jury could infer from the discovery of the stolen diamond ring on the front seat of Cross' automobile that he was the thief. While it is true that, absent a reasonable explanation, exclusive possession of recently stolen property authorizes the trier of fact to draw an inference of guilt sufficient to sustain the conviction of the possessor as either the thief or a receiver of stolen goods, *e.g., Brewer v. Mele,* 267 Md. 437, 449, 298 A. 2d 156, 164 (1972) (citation of authorities),[10] that rule is of little aid to the State here. This

---

9. The State also argues that the evidence of the Buffington break-in was properly admitted since it tended to rebut the testimony of Cross' wife as to his presence in Hagerstown at the time of the Fridell burglary. The short answer to this contention is that the evidence was not offered for that purpose, *cf.* State v. Hepple, 279 Md. 265, 368 A. 2d 445 (1977); in any event, since it in no way connects Cross with the criminal acts at the Buffington home, it has no probative value in rebutting any testimony produced by the petitioner.

10. In Anglin v. State, 244 Md. 652, 656-57, 224 A. 2d 668, 670 (1966), *cert. denied,* 386 U. S. 947 (1967), this Court justified the allowance of such an inference thus:

> The reasonableness and legality of permitting an inference of fact that exclusive recent and unaccounted for possession is a guilty possession is explained by the rule that there may be drawn an inference of one fact from proof of another or others if there is some rational connection between the fact or facts proved and the

is so since the record reveals with absolute clarity that Cross was simply not shown to have been in possession of the stolen ring. Courts throughout the country, including this Court and the Court of Special Appeals, have struggled, with only limited success, to define precisely what is required to establish the requisite possession. *See, e.g., Brooks v. State,* 235 Md. 23, 31-32, 200 A. 2d 177, 181-82 (1964); *Butz v. State,* 221 Md. 68, 77-78, 156 A. 2d 423, 428 (1959); *Jordan v. State,* 219 Md. 36. 43-46, 148 A. 2d 292, 297-98, *cert. denied,* 361 U. S. 849 (1959); *Polansky v. State,* 205 Md. 362, 366-67, 109 A. 2d 52, 54 (1954); *Boswell and Poe v. State,* 5 Md. App. 571, 578-79, 249 A. 2d 490, 496-97 (1968), *cert. denied,* 253 Md. 733 & 735 (1969); *Hickman v. State,* 1 Md. App. 578, 579-81, 232 A. 2d 282, 283-84 (1967); *State v. King,* 379 A. 2d 131, 134-35 (Me. 1977); *Castle v. Commonwealth,* 196 Va. 222, 83 S.E.2d 360, 363-64 (1954). *See generally* Annot., 51 A.L.R.3d 727 (1973). We will not undertake to assay a suitable definition in this case, since, however that concept might ultimately be defined, it is clear that a mere showing of legal title to the place where the stolen property was discovered will not, standing alone, permit an inference of guilt to be drawn. Here, nothing was shown beyond the fact that the petitioner owned the car. No evidence was presented that he occupied the vehicle in which the ring was located either before, at the time of, or, except to retrieve his personal belongings, after the February 16 accident — or indeed at any other time. To the contrary, from the time of the accident until the ring was discovered on February 18, the evidence specifically negates any form of possession beyond whatever bare legal title may denote, demonstrating instead that the vehicle was in the possession of the police and the garage as their agent, having been towed from the scene of the accident by a service station operator, left unlocked at that station, and finally removed again to an impoundment lot five miles from the station; the record is silent as to who, with or without permission, may have had access to it at the lot.[11] Since the record is utterly

ultimate fact inferred so that the inference drawn from the proof is not so far-fetched as to be arbitrary.

11. Although Cross, with written authority of the police and under the watchful eye of the garage operator, did enter the automobile while it was

devoid of any evidence placing the petitioner at any time in the vehicle where the ring was discovered, the determination upon which the inference of Cross' guilt must rest — that he was in exclusive possession of recently stolen goods — simply cannot stand.

For each of the two reasons explained, the judgment of the Court of Special Appeals must be reversed.

> *Judgment of the Court of Special Appeals reversed with direction to it to reverse the judgment of the Circuit Court for Howard County and remand the cause to that court for a new trial.*
> *Costs to be paid by Howard County.*

---

at the service station to remove his personal belongings, the vehicle and whatever contents were left remained in the possession of the police and the garageman as their agent.