701 A.2d 389

**STATE of Maryland**

v.

**James W. TAYLOR.**

**No. 66, Sept. Term, 1996.**

Court of Appeals of Maryland.

Oct. 14, 1997.

Karwacki, J., dissented with separate opinion in which Bell, C.J., and Eldridge, J., joined.

364

Annabelle L. Lisic, Asst. Atty. General (J. Joseph Curran, Jr., Atty. General, on brief), Baltimore, for petitioner.

Margaret L. Lanier, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI,* RAKER and WILNER, JJ.

CHASANOW, Judge.

James W. Taylor, the Respondent, was charged in five separate indictments with child abuse in violation of Maryland Code (1957, 1992 Repl.Vol.), Article 27, § 35A, and the lesser-included, common-law offenses of assault and of battery. The indictments were consolidated for trial on July 29, 1994, despite Taylor's motion to sever the charges. The State entered a *nolle prosequi* on the assault charges and, on February 15, 1995, the jury returned a verdict of guilty on two counts of child abuse and the corresponding battery charges. The battery convictions were merged into the child abuse convictions, and Taylor was thereafter sentenced to a term of fifteen years of incarceration on each child abuse count, to run concurrently. In an unreported opinion, the Court of Special Appeals reversed and remanded, holding that the trial court erred in denying Taylor's motion to sever. We granted certiorari to decide whether severance was mandated as a matter of law. We conclude that separate trials were not required and shall reverse the judgment of the intermediate appellate court.

## I.

The charges lodged against Taylor arose from the physical abuse, in separate incidents, of Taylor's fourteen-year-old

---

* Karwacki, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, § 3A, he also participated in the decision and the adoption of this opinion.

stepson, Keith C., during a two and one-half month period in 1994. The first incident occurred between March 1 and March 31, 1994. Keith claimed that Taylor, whom Keith referred to as his "dad," punched him in the jaw with his fist, leaving a bruise that was visible "[f]or maybe a week, maybe two weeks." Keith could not recall the predicate for Taylor's display of anger. The second instance of abuse took place sometime between April 17 and April 31, 1994. Keith testified that, for a reason unknown to the child, Taylor used an electric cord to whip him across the shoulders. This left "two scars on each side of [his] shoulders." The third episode, in which Taylor is alleged to have poked Keith in the chest with the sharpened end of a stick, occurred on May 11, 1994, while the two were laying carpet in the bathroom. Keith could not recall the cause of Taylor's actions. The incident left a scar on Keith's chest. The fourth count of battery and child abuse arose out of events that occurred on May 13, 1994. During dinner that evening, while preparing the family's plates, Keith picked up a piece of chicken with his hand and Taylor "got . . . angry and stabbed [him] with a fork on the top of [his] head." According to Keith, the blow caused his head to bleed. The last offense allegedly committed by Taylor took place two days later, on May 15, 1994. Keith stated that while he and Taylor were straightening up a storage closet in the house, Taylor punched him in the mouth with his fist. Apparently, Keith had "made some sort of mistake," although he could not recall the precise nature thereof.

Later that same day, police officers came to the Taylor residence to execute an arrest warrant on Taylor for an unrelated matter. Following Taylor's arrest, Keith and his mother, Mary Taylor, spoke to Corporal David Suggs of the Howard County Police Department and recounted to him the events giving rise to the indictments. Suggs observed that Keith's mouth was swollen. The detective also photographed the scars on Keith's shoulders and a scar from a pointed object on Keith's chest.

The five cases were consolidated for trial on motion of the State after the trial judge determined that even if Taylor were

tried separately for each child abuse charge, all of the other alleged acts of child abuse would be admissible in each trial to prove Taylor's intent, malice, and absence of mistake. The charges Taylor was convicted of were the two charges of child abuse and the corresponding two charges of battery for the April 17–April 30 beating with the electrical cord and the May 15 punching. Taylor was acquitted of all other charges.

The State challenges the Court of Special Appeals' reversal of the trial court's decision to consolidate Taylor's indictments. It claims that the evidence as to each of the five acts charged "was not offered to show that Taylor was generally a bad person, but to establish Taylor's intent and the absence of mistake in striking his stepson." In other words, it argues that the evidence as to each of the five acts of child abuse was mutually admissible in separate trials of the other under the malice, intent, and mistake exceptions to the other crimes evidence rule. This being the case, the State asserts that joinder was not prejudicial. It further avers that the prejudice resulting from the admission of the evidence relative to each of the five acts, if any, is outweighed by the interest in judicial economy served by conducting a joint trial on all of the charges.

Taylor complains that the defense was prejudiced by the joinder and, thus, by the admission of the other crimes evidence, "which under the circumstances, showed nothing more than propensity, allowing the jury to conclude that [he] was a ' "bad person" and should therefore be convicted, or deserves punishment for other bad conduct and so may be convicted even though the evidence is lacking.' " (quoting *Harris v. State*, 324 Md. 490, 499, 597 A.2d 956, 961 (1991)). He maintains that the record evidence fails to establish that the criteria for mutual admissibility were satisfied and points out, "[i]t has been the law in Maryland since *McKnight v. State*, 280 Md. 604, 375 A.2d 551 (1977), that to survive a motion to sever, evidence of each of the counts must be mutually admissible in a separate prosecution of all of the others."

## THE TEST FOR CONSOLIDATION

This Court recently discussed the test for joinder of offenses in *Conyers v. State,* 345 Md. 525, 693 A.2d 781 (1997). We used a two part test. First, is the evidence concerning each of the charged offenses mutually admissible; and second, does the interest in judicial economy outweigh the arguments favoring separate trials. The second part of the test should not be in dispute in the instant case. A paramount interest of our criminal justice system should be avoiding unnecessary trials and the accompanying trauma to young victims of multiple acts of child abuse. These children should not have to testify at multiple trials if the evidence would be the same at each trial and all of the acts of alleged abuse would be mutually admissible at each trial.

## ADMISSIBILITY OF OTHER ASSAULTS OR CHILD ABUSE BY THE SAME DEFENDANT ON THE SAME VICTIM

The admissibility of other crimes evidence is governed by Maryland Rule 5–404(b) which provides:

"**(b) Other Crimes, Wrongs, or Acts.**—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident."

Evidence of other crimes or other bad acts committed by the accused is not admissible unless it has special relevance, *i.e.,* it is substantially relevant to some contested issue and is not offered simply to prove criminal character. *See* Md. Rule 5–404; *Harris v. State,* 324 Md. 490, 497, 597 A.2d 956, 960 (1991); *Cross v. State,* 282 Md. 468, 473, 386 A.2d 757, 761 (1978); *see also State v. Faulkner,* 314 Md. 630, 634, 552 A.2d 896, 897–98 (1989); *Ross v. State,* 276 Md. 664, 669, 350 A.2d 680, 684 (1976)(quoting CHARLES T. McCORMICK, EVIDENCE § 190 (2d ed. 1972))("[T]he state may not present

evidence of other criminal acts of the accused unless the evidence is 'substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character.' "). As we noted in *Cross*, 282 Md. at 473, 386 A.2d at 761: "[T]here are few principles of American criminal jurisprudence more universally accepted than the rule that evidence which tends to show that the accused committed another crime independent of that for which he is on trial, even one of the same type, is inadmissible." Such "other crimes" evidence lacks special relevance because it "is generally more prejudicial than probative." *McKnight*, 280 Md. at 611, 375 A.2d at 555; *see Ayers v. State*, 335 Md. 602, 631 n. 8, 645 A.2d 22, 36 n. 8 (1994), *cert. denied*, 513 U.S. 1130, 115 S.Ct. 942, 130 L.Ed.2d 886 (1995). Thus, the evidence must ordinarily tend to prove motive, intent, absence of mistake or accident, a common scheme, or identity embracing the commission of two or more crimes to escape exclusion by the general rule. *Acuna v. State*, 332 Md. 65, 74–75, 629 A.2d 1233, 1237–38 (1993); *Harris*, 324 Md. at 501, 597 A.2d at 962; *Cross*, 282 Md. at 473–74, 386 A.2d at 761; *Ross*, 276 Md. at 669–70, 350 A.2d at 684; *Purviance v. State*, 185 Md. 189, 196, 44 A.2d 474, 477 (1945); JOSEPH F. MURPHY, JR., MARYLAND EVIDENCE HANDBOOK § 510(E)(2d ed.1993); LYNN MCLAIN, MARYLAND EVIDENCE § 404.5 (1987). The evidence may also be admitted if the crimes are so linked together in point of time or circumstances that one cannot be fully shown without proving the other. *Bryant v. State*, 207 Md. 565, 586, 115 A.2d 502, 511 (1955).

Underlying this rule is the concern that the jury will use the other crimes evidence to convict and punish the defendant for having a criminal disposition or to infer that he is more likely to have committed the crime for which he is on trial. *Straughn v. State*, 297 Md. 329, 333, 465 A.2d 1166, 1168–69 (1983); *see also Terry v. State*, 332 Md. 329, 334, 631 A.2d 424, 426 (1993)(Such evidence "may tend to confuse the jurors, predispose them to a belief in the defendant's guilt, or prejudice their minds against the defendant."); *Faulkner*, 314 Md. at 633, 552 A.2d at 897 (same); *Ross*, 276 Md. at 669, 350

A.2d at 684 (same). With these principles in mind we also note that several of our prior cases construing the child abuse statute have recognized the relevance of intent and malice in child abuse cases. Intent and malice can be critical in distinguishing permissible parental corporal punishment from criminal child abuse.

Abuse is defined in the child abuse statute as:

"(i) The sustaining of physical injury by a child as a result of cruel or inhumane treatment or as a result of a malicious act by any parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child, or by any household or family member, under circumstances that indicate that the child's health or welfare is harmed or threatened thereby; or

(ii) Sexual abuse of a child, whether physical injuries are sustained or not."

Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 35C.

This Court fully explained the mental state required for child abuse in *Bowers v. State*, 283 Md. 115, 389 A.2d 341 (1978). In *Bowers* the defendant challenged the child abuse statute as being void for vagueness and not specifying the difference between permissible corporal punishment and child abuse. We gave a lengthy explanation of the difference between non-criminal corporal punishment and child abuse. This Court stated:

"Long before the advent of contemporary child abuse legislation, it was a well-recognized precept of Anglo–American jurisprudence that the parent of a minor child or one standing in *loco parentis* was justified in using a reasonable amount of force upon a child for the purpose of safeguarding or promoting the child's welfare. So long as the chastisement was moderate and reasonable, in light of the age, condition and disposition of the child, and other surrounding circumstances, the parent or custodian would not incur criminal liability for assault and battery or a similar offense.

On the other hand, where corporal punishment was inflicted with 'a malicious desire to cause pain' or where it

amounted to 'cruel and outrageous' treatment of the child, the chastisement was deemed unreasonable, thus defeating the parental privilege and subjecting the parent to penal sanctions in those circumstances where criminal liability would have existed absent the parent-child relationship. Put another way, a parent was not permitted under the common law to resort to punishment which would exceed 'that properly required for disciplinary purposes' or which would extend beyond the bounds of moderation. 'Excessive or cruel' conduct was universally prohibited.

In amending the child abuse statute in 1973 so as to include for the first time a definition of abuse, the General Assembly was well aware of the common law limitations on the parental privilege to impose discipline. Indeed, we have repeatedly held that the Legislature is presumed to have had full knowledge and information as to prior and existing law on the subject of a statute it has enacted. By electing to restrict the criminal liability of parents under the statute only to those cases where the parent or custodian causes his child or ward to sustain physical injury as a result of *cruel or inhumane treatment or as a result of other acts of malice,* the Legislature apparently intended the definition of abuse to correspond to that type of conduct which would have sufficed to destroy the privilege to discipline at common law.

Thus, the terminology employed in Article 27, § 35A(b)(7)(A) appears to be nothing but a codification of the common law principles concerning the limits of permissible parental chastisement. Since the contours of the common law privilege have been subject for centuries to definition and refinement through careful and constant judicial decision-making, terms like 'cruel or inhumane' and 'malicious' have acquired a relatively widely accepted connotation in the law. The use of such phraseology in the child abuse statute would, therefore, not render the law constitutionally infirm.

For these reasons, the Maryland child abuse law is sufficiently explicit to survive even strict scrutiny under the Due Process Clause. First, it meets the requirement of notice,

such that persons of common intelligence need not guess at its meaning or speculate as to its application. If the underlying rationale of the fair notice requirement is that a conviction should not result from conduct which cannot reasonably be understood as proscribed, that danger has been avoided here. Parents of ordinary intelligence are made aware that they do not subject themselves to the statute by merely engaging in corporal discipline for the purpose of punishment or correction. Only when the line is crossed and physical injury is *intentionally and maliciously or cruelly inflicted* does criminal responsibility attach. In short, the statute provides fair warning; it sets no trap for the unwary or innocent parent." (Emphasis added) (citations omitted).

*Bowers,* 283 Md. at 126–28, 389 A.2d at 348–49.

■ Lack of intent or malice was a contention of the defense in the instant case. Proof of other brutality against Keith by his stepfather was admissible to prove Taylor's intent and malice. In addition, where a primary issue is the culpable state of mind of the defendant, any chance of prejudice by virtue of the admission of prior bad acts is less than if the primary issue is identity of the perpetrator. Taylor chose not to take the stand. The defense strategy was to rely on the plea of not guilty and to require the State to prove each element of the crimes beyond a reasonable doubt. Defense counsel did, however, acknowledge that identity was really not in dispute. At the hearing on the motion for separate trials, the defense counsel stated: "There is no suggestion here that there's a problem with identification. I would suggest that identification is not an issue here." The contention was that either Keith was fabricating his claims of child abuse or Taylor was acting in the role of Keith's father, and these were permissible disciplinary acts, not child abuse or battery. Because Keith bore visible evidence of the two acts of abuse for which Taylor was convicted and the blows could not be imaginary, the central issue in the case seemed to be whether the blows exceeded permissible parental discipline. Intent to

cause physical injury and malice were important elements of the State's case.

Sexual child abuse and physical child abuse are both crimes under the same statute. This Court has expressly permitted prior acts of sexual child abuse perpetrated by the defendant against the same victim to be admissible in sexual child abuse cases even though malice and intent are irrelevant in such cases, and accident is almost never a defense. See, for example, *Vogel v. State*, 315 Md. 458, 554 A.2d 1231 (1989), a sexual child abuse case where this Court sustained the admission of evidence of other sex acts perpetrated by the defendant against the same fourteen-year-old victim. *Vogel* was reaffirmed in *Acuna v. State*, 332 Md. 65, 629 A.2d 1233 (1993)(holding prior acts of sexual child abuse by the defendant against the same victim admissible). The justification for admitting other acts of abuse is even greater in physical child abuse cases than in sexual child abuse cases, for there is rarely any claim that sexual child abuse is "accidental" or is proper parental discipline.

A case relevant to the issue in the instant case is *Duckworth v. State*, 323 Md. 532, 594 A.2d 109 (1991). In *Duckworth* the defendant was convicted of child abuse and battery of a three-year-old girl left in his charge. 323 Md. at 534–35, 594 A.2d at 110. The evidence was that the defendant was holding a handgun loaded with birdshot that discharged and injured the child. *Duckworth*, 323 Md. at 535–36, 594 A.2d at 110–11. Over objection, the State was permitted to introduce testimony that, on a prior occasion, the defendant injured the same child with a BB pistol. *Duckworth*, 323 Md. at 537–39, 594 A.2d at 112–14. This Court held that the prior shooting incident was admissible on both the battery charge, to prove recklessness, and the child abuse charge. *Duckworth*, 323 Md. at 544, 594 A.2d at 114–15. We stated:

"Thus, the State's theory of the case on the battery charge was legally sound, namely, that Duckworth criminally wounded Mandy by recklessly handling a firearm. It follows that the testimony by Mandy's mother concerning an accidental shooting with a BB gun approximately one week

prior to the battery was clearly relevant. Mandy was struck by a BB on the earlier occasion—precisely where, we do not know. The jurors might well reason that one in the position of Duckworth would be relieved that the accidental discharge of the BB gun had not blinded Mandy. Certainly, the jury could conclude that the accidental discharge of the BB gun in the earlier incident was a warning to Duckworth that should have reinforced the need for substantial caution when handling firearms. Duckworth's failure, on the occasion of the shooting charged in the indictment, to heed that warning exacerbated the recklessness involved in the crime charged.

\* \* \*

Bergdoll's testimony concerning the accident with the BB gun was also relevant to the charge of child abuse...."
*Duckworth*, 323 Md. at 544, 594 A.2d at 114.

A recurring child abuse scenario is one in which an infant is brought to a hospital emergency room with multiple broken bones in various stages of healing. If, in ensuing child abuse prosecutions the multiple, separately occurring injuries are not admissible, then child abuse would be almost impossible to prove. A common defense used by custodians in child abuse cases is that the child's injuries were accidently inflicted, and in many instances the only way the State can rebut this contention is by showing other acts of abuse to prove intent, malice, or that any excessive force could not be an innocent mistake.

The fact that Taylor did not testify and thus did not expressly state that the injuries were accidental, that he had no malice, and that he had no intent to injure should not prevent the use of the other crimes evidence. In *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), the Supreme Court held there was no due process violation where, in the trial of a father accused of the second-degree murder of his infant daughter, evidence was admitted that the child suffered from battered child syndrome and had sustained several serious injuries prior to the fatal injuries. What the

Supreme Court said about generating the issue that permits the prosecution to use evidence of the prior injuries is relevant to the instant case. In an opinion by Chief Justice Rehnquist, which was joined by five other Justices, the Court said:

"In holding the prior injury evidence inadmissible, the Court of Appeals ... relied on the theory that, because no claim was made at trial that [the victim] Tori died accidentally, the battered child syndrome evidence was irrelevant and violative of due process. This ruling ignores the fact that the prosecution must prove all the elements of a criminal offense beyond a reasonable doubt. In this second-degree murder case, for example, the prosecution was required to demonstrate that the killing was intentional. By eliminating the possibility of accident, the evidence regarding battered child syndrome was clearly probative of that *essential element,* especially in light of the fact that McGuire had claimed prior to trial that Tori had injured herself by falling from the couch. The Court of Appeals, however, ruled that the evidence should have been excluded because McGuire did not raise the defense of accidental death at trial. But *the prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element* of the offense. In the federal courts '[a] simple plea of not guilty ... puts the prosecution to its proof as to all elements of the crime charged.' *Mathews v. United States,* 485 U.S. 58, 64–65, 108 S.Ct. 883, 887, 99 L.Ed.2d 54[, 62] (1988). Neither the Court of Appeals nor the parties have given us any reason to think that the rule is different in California. The evidence of battered child syndrome was relevant to show intent, and *nothing in* the *Due Process Clause* of the Fourteenth Amendment *requires the State to refrain from introducing relevant evidence* simply because the defense chooses not to contest the point." (Emphasis added) (citations omitted).

*Estelle,* 502 U.S. at 69–70, 112 S.Ct. at 480–81, 116 L.Ed.2d at 397; *see also Merzbacher v. State,* 346 Md. 391, 410-11, 697 A.2d 432, 441-42 (1997)(In prosecution for common-law rape,

State required to prove lack of consent even though lack of consent was not raised). In addition, the motions judge knew that permissible parental discipline was a primary defense contention because, although the judge suppressed the statement on Sixth Amendment grounds, Taylor made a statement that "the only time I would beat him was if my son was doing something real wrong."

There is substantial authority supporting the admission of prior acts of violence perpetrated by the defendant against the same child in a child abuse prosecution. *See, e.g., United States v. Harris,* 661 F.2d 138, 142 (10th Cir.1981)("particularly in child abuse cases" the "admissibility of evidence of other crimes, wrongs, or acts to establish intent and an absence of mistake or accident is well established"); *People v. Taggart,* 621 P.2d 1375, 1384–85 (Colo.1981)(evidence of prior acts of violence admissible to show criminal culpability and negate claim of accident or justification)(rejected on other grounds in *James v. People,* 727 P.2d 850 (Colo.1986)); *Mayberry v. State,* 430 So.2d 908 (Fla.Dist.Ct.App.1982)(evidence of defendant's prior abuse admissible in trial for second-degree murder and child abuse); *State v. Morosin,* 200 Neb. 62, 262 N.W.2d 194, 197 (1978)(" ' " 'Where an act is equivocal in nature, and may be criminal or honest according to the intent with which it is done, then other acts of the defendant, and his conduct on other occasions, may be shown in order to disclose the mastering purpose of the alleged criminal act.' " ' The principle reflected in that statement is particularly applicable to child abuse cases. Evidence of intent, in such cases, is ordinarily circumstantial, and injuries to children are ordinarily claimed to be accidental or unintentional.")(quoting *State v. Ray,* 191 Neb. 702, 217 N.W.2d 176, 177 (1974), in turn quoting *Turpit v. State,* 154 Neb. 385, 48 N.W.2d 83, 87 (1951), in turn quoting 1 WHARTON'S CRIMINAL EVIDENCE § 320, at 520 (11th ed.)); *Bludsworth v. State,* 98 Nev. 289, 646 P.2d 558, 559 (1982)("Proof that a child has experienced injuries in many purported accidents is evidence that the most recent injury may not have resulted from yet another accident." (Citation omitted)); *State v. West,* 103 N.C.App. 1, 404 S.E.2d 191, 197

(1991)("Our courts have consistently held that past incidents of mistreatment are admissible to show intent in a child abuse case." (citations omitted)); *Aldridge v. State*, 398 So.2d 1308, 1312 (Miss.1981)(in a prosecution for felonious abuse and battery of a child, evidence of prior acts of child abuse held admissible to negate the idea that the injuries resulted from an isolated incident)(rule of *Aldridge* reaffirmed in *Shelton v. State*, 445 So.2d 844, 848 (Miss.1984)); Lloyd Leva Plaine, Comment, *Evidentiary Problems In Criminal Child Abuse Prosecutions*, 63 GEO. L.J. 257, 264 (1974)("Thus, malice and intent may be inferred from a showing of lack of accident or may be shown by testimony concerning prior injuries that were not accidental.").

Where a parent uses severe corporal punishment, often the only way to determine whether the punishment is a non-criminal act of discipline that was unintentionally harsh or whether it constitutes the felony of child abuse is to look at the parent's history of disciplining the child. The probative value of recent corporal punishment used on a child in order to determine the parental disciplinarian's malice and intent far exceeds its potential for unfair prejudice. In the instant case, the fact that Taylor was only convicted of acts of violence that left physical evidence of their severity and was acquitted on three other charges of child abuse gives some indication that the jury was not inflamed or prejudiced by the testimony about prior acts of corporal punishment. Victims of child abuse often cannot speak for themselves or are very reluctant to testify unfavorably about a parent, even an abusive parent. A parent's other disciplinary acts can be the most probative evidence of whether his or her disciplinary corporal punishment is imposed maliciously, with an intent to injure, or with a sincere desire to use appropriate corrective measures.

Since each of Taylor's acts of violence against Keith would be admissible in each prosecution for child abuse, there was no reason to require five separate trials and the trial judge did not abuse his discretion in consolidating all cases for trial.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REINSTATE THE JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.*

Dissenting opinion by KARWACKI, J., in which BELL, C.J., and ELDRIDGE, J., join.

KARWACKI, Judge, dissenting.

The majority recognizes the well settled Maryland law of evidence concerning the test for consolidation of offenses in the prosecution of an accused. Nevertheless, in my judgment it misapplies that law in the instant case.

Notwithstanding its concession that the respondent raised no defense to the child abuse charges based upon lack of motive or intent or mistake exceptions to the general exclusion of evidence of other crimes, the majority concludes that those exceptions justified the mutual admissibility of evidence of the other charged offenses in each of the child abuse prosecutions. In reaching this conclusion reliance is improperly placed upon a statement made by Taylor to a social worker, a statement suppressed by the trial court as made in violation of his right to counsel.

Moreover, I disagree with the majority's assertion that the State was entitled to negate *in its case in chief* the possible defenses of lack of motive or intent or mistake on the part of the defendant. *See* Lynn McLain, Maryland Practice § 404.12, where the author states:

"If the defendant admits that he or she took an action, but claims to have done so unintentionally or by mistake, so that allegations of, for example, forgery, fraud, embezzlement, or malice are unfounded, the prosecution may offer evidence of his or her similar prior wrongs, acts, or crimes, This use of the evidence as proof of absence of mistake is merely the obverse of proof of intent.

Similarly, the defendant may claim the harm he or she is alleged to have caused was not at his or her hands, but was the result of an independent accident. Evidence of prior similar acts is *then* admissible to show lack of mistake or accident. For example, if a defendant charged with child abuse contends that the child's injuries were caused by an accidental fall, evidence of prior beatings of the child will be admissible."

(Emphasis added, footnotes omitted). Allowing the prosecution to speculate on the accused's defenses for the purpose of satisfying the mutual admissibility requirement of the joinder rule renders that requirement nugatory as a protection of the accused's right to a fair trial. Thus, I agree with the Court of Special Appeals that the trial court erred in joining the offenses for trial. It is difficult for me to conceive of a basis, other than propensity, upon which evidence of the other charged offenses against the defendant could be proffered. Since this evidence was not mutually admissible in the several prosecutions, joinder in this case did not pass muster under the first prong of the test for joinder of offenses we most recently repeated in *Conyers v. State*, 345 Md. 525, 553, 693 A.2d 781, 794 (1997), i.e., that the evidence concerning each of the charged offenses is mutually admissible. Consequently, the second prong of the test, i.e., whether or not the interest in judicial economy outweighs the arguments favoring separate trials, is not a consideration in deciding the joinder issue. *Id.*, 345 Md. at 552, 693 A.2d at 793.

For these reasons, I respectfully dissent.

BELL, C.J., and ELDRIDGE, J., join in this dissent.