STATE of Wisconsin, Plaintiff-Respondent,

v.

KIMBERLY B., Defendant-Appellant.†

Court of Appeals

*No. 2004AP1424–CR. Submitted on briefs March 31, 2005.
—Decided May 4, 2005.*

2005 WI App 115

(Also reported in 699 N.W.2d 641.)

731

On behalf of the defendant-appellant, the cause was submitted on the brief of *Anthony Milisauskas* of *Anthony Milisauskas, S.C.*, Kenosha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James M. Freimuth*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

¶ 1. ANDERSON, P.J.    Kimberly B. appeals from a judgment of conviction for intentionally causing bodily harm to a child for whom she was responsible, contrary to WIS. STAT. §§ 948.03(2)(b) and (5) (2001–02).[1] The

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted. We note that the legislature has since amended WIS. STAT. § 948.03(2)(b) and repealed § 948.03(5). 2001 Wis. Act 109, §§ 888, 895. These changes, however, occurred after the crime was committed and Kimberly was charged.

conviction relates to an incident in a mall parking lot where two loss prevention officers witnessed Kimberly repeatedly punch and verbally abuse her nine-year-old daughter. Kimberly raises two primary issues for our review: (1) whether there was sufficient evidence to enable a reasonable jury to find her guilty of physical abuse of her daughter and to negate her defense of reasonable discipline and (2) whether the trial court properly admitted evidence that on two separate occasions prior to the charged crime, Kimberly had hit her daughter with a belt or an extension cord.

¶ 2.    We hold that there was sufficient evidence to allow a reasonable jury to conclude that Kimberly intentionally caused bodily harm to her daughter in violation of WIS. STAT. §§ 948.03(2)(b) and (5). We further hold that there was sufficient evidence to allow a reasonable jury to conclude that the amount of force Kimberly used to punish her daughter was unreasonable and therefore the parental privilege of reasonable discipline did not apply. Finally, we conclude that the trial court properly determined that the other acts evidence passed muster under the three-step test articulated in *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998). We affirm the judgment of conviction.

### *Facts*

¶ 3.    On July 26, 2002, the State filed a criminal complaint against Kimberly, charging her with one count of physical abuse of a child in violation of WIS. STAT. § 948.03(2)(b). According to the complaint, on July 25 in the parking lot of the Prime Outlet Mall in Kenosha county, Kimberly repeatedly hit her nine-year-

737

old daughter, Jasmine, with a closed fist while telling her to "shut up" and "stop crying" and calling her a "big fat slut." The complaint stated that Kimberly also hit Jasmine with an umbrella. The complaint further alleged that the police officer dispatched to the scene observed a bruise and swelling beneath Jasmine's right eye, marks on her left arm and a portion of skin that had been peeled off due to being hit with the umbrella. The State filed an information in September invoking both § 948.03(2)(b) and the penalty enhancer provision in § 948.03(5) for a person "responsible for the welfare" of the child-victim.

¶ 4.    Prior to the jury trial, the State filed a motion to introduce other acts evidence pursuant to Wis. Stat. § 904.04(2). The State sought to introduce evidence that Kimberly, in the name of discipline, had physically abused Jasmine in 1995 and 1999 by whipping her with a belt or an extension cord. Kimberly objected to the introduction of such evidence. After carefully walking through each step of the *Sullivan* test, the trial court determined that the State's other acts evidence was admissible.

¶ 5.    The jury trial was held on June 2 and 3, 2003. The State called to testify:   the two loss prevention officers who witnessed the incident in the parking lot, the police officer dispatched to the scene, a social worker who investigated the report of abuse, Jasmine, and three other acts witnesses. The defense called a longtime friend of Kimberly's who observed Jasmine on the night of, and the night following, the incident. Because Kimberly challenges on appeal the sufficiency of the evidence presented at trial and the propriety of the other acts witnesses, we will summarize relevant portions of each witness' testimony below.

738

¶ 6.   Christina Albritton and Edmund Cobb were working as loss prevention officers for a store in the Prime Outlet Mall on July 25, 2002. As they sat in Cobb's van in the parking lot monitoring customers, they heard "yelling" from a nearby minivan. Cobb and Albritton testified that they saw a woman leaning into the minivan through a sliding door and yelling at a crying girl. They gave similar accounts at trial of what they then observed take place in the minivan.

¶ 7.   Albritton recounted:

> I looked over, and I saw the woman holding the child by her arms, and I heard her yelling at her to stop crying; and then the girl yelled back at her, mommy, stop hitting me; and then I saw the woman reach back with a closed fist and start hitting the child. The child was kind [of] cowering down and kind of covering and moving around so she wasn't hitting her in any specific place.

Albritton stated she not only saw the woman punch the girl "about six times," but also "heard the fist make contact with the child as well." Albritton testified that the girl did not fight back but was crying and pleading with the woman to stop hitting her. Albritton reported that the woman kept telling the girl to "shut up" and "stop crying" and called the girl a "big fat slut." According to Albritton, the woman "seemed completely just filled with rage and anger. Just consumed by it."

¶ 8.   Cobb testified that the woman initially slapped the girl two or three times "with an open hand." He recalled the woman then "closing her fist" and, with "a full swing" of her arm, punching the girl "eight or nine times." Cobb said the girl sounded "scared" as she asked the woman to stop hitting her and tried to block the punches. Cobb indicated that the woman appeared "very angry," to the point of being "out of control."

739

¶ 9. Albritton testified that she was afraid to get into a physical confrontation with the woman and that before the punching had stopped, she ran into a store at the mall and called the police. Pleasant Prairie Police Officer Sandra Thomey responded to the dispatcher's report of possible domestic violence at the mall.

¶ 10. Thomey first spoke with Jasmine, who had tears in her eyes, outside a mall store. Thomey also noticed that Jasmine had "swelling underneath her . . . right eye" and a "red abrasion" and bruise just below her eyebrow. She stated that Jasmine's right arm displayed a "handprint mark" and a fresh area where the "skin was peeled back from being poked." Albritton also testified about her observations of Jasmine's physical appearance after Thomey arrived. She said "one of [Jasmine's] eyes was beginning to be puffy. I could see swelling and redness and some bruising." She said Jasmine "was starting to get a black eye" and that she had "welts" and a "hand mark" on one arm, where "a piece of the skin was missing." Despite the presence of injuries, Thomey testified that she did not think Jasmine needed medical treatment other than an ice bag, which Jasmine later rejected in favor of a soda.

¶ 11. Thomey described Jasmine as being quiet and scared when she interviewed her outside the mall store. She said that Jasmine gave different versions of what had happened that day. Jasmine told Thomey that her mother had either "spanked" her or "slapped" her hands for "acting out," "sassing" her mother and "picking on the other kids." When she asked Jasmine how she had hurt her eye, Jasmine first said that she had fallen and then said her brother had hit her in the eye two months earlier.

¶ 12. After her partner arrested Kimberly, Thomey resumed interviewing Jasmine at the police sta-

tion. According to Thomey, Jasmine informed her that her mother had pulled her out of a store by the arm and slapped her hands because she had stepped on another girl's foot. Jasmine said her mother became increasingly angry the more that she cried and that when they arrived at their minivan her mother began punching her with a closed fist "in the arms and in the legs [and] . . . all over." Thomey said Jasmine also reported that her mother had poked and hit her with an umbrella in the right arm, causing the skin to peel back, which she said "hurt very much." Jasmine informed Thomey that her mother had called her "a fat slut," something her mother said when Jasmine had been a "bad girl."

¶ 13.  Jasmine also testified about the events at the mall parking lot. Jasmine testified that she hit one of the other children in her group with a bag and stepped on her foot when her mother refused to purchase items for her that she wanted. Jasmine said she also "started throwing down shoes" in a shoe store when her mother refused to buy shoes for her. She said her face and arm hurt that day, but that her mother only hit her on the hand and arm. She said her mother did not call her a name, yell at her, or hit her with an umbrella. She testified that she missed her mother and was afraid of what could happen to her mother.

¶ 14.  Carisa Phinisee, a state-employed child abuse investigator in Milwaukee, testified that she interviewed Jasmine after the mall incident. Jasmine told Phinisee that her mother had hit her with a closed fist "lots of times" in the minivan and that her mother had hit her with an umbrella.

¶ 15.  The State also presented three other acts witnesses. Before each other acts witness testified at trial, the trial court instructed the jurors that they

should only consider such testimony "on the issues of [Kimberly's] knowledge, intent, [and/or] absence of mistake or accident." The jurors also were instructed that they could not consider such testimony to conclude that Kimberly had a certain character or character trait or that Kimberly acted in conformity therewith with respect to the charged crime.

¶ 16. Milwaukee Police Sergeant Joenette Kelly-Kidd and child protective services manager Dena Lucoff testified about the 1995 incident. Kelly-Kidd stated that on November 8 of that year, she responded to a day care center. According to Kelly-Kidd, Jasmine, then age two, had "[l]oop marks on [her] lower body." Jasmine told the sergeant that "Mommy whooped me." Kelly-Kidd said the loop marks indicated that Jasmine had been struck with an object, most likely a belt or an extension cord. When Kelly-Kidd asked Kimberly about Jasmine's injuries, Kimberly admitted hitting Jasmine with an extension cord to discipline her. Lucoff also testified that Jasmine had "loop marks" on her thigh and that Jasmine had told her that her "mamma whooped" her. Lucoff further testified that Kimberly informed her that she had "whooped [Jasmine]" because Jasmine had removed some of her clothing at the day care.

¶ 17. Angela Hanick-Cook, Jasmine's first-grade teacher, testified about the 1999 incident. Hanick-Cook testified that Jasmine "came up to her desk, and she showed me all her bruises on her back and her arms and legs." According to Hanick-Cook, Jasmine tearfully explained that she had spilled some oil on her mother's dresser and her mother had beat her with a belt. Hanick-Cook recalled that Jasmine was afraid to go home that day. Hanick-Cook stated that she had contacted social services to report the situation.

¶ 18. Finally, Dawn Smith, a longtime friend of Kimberly's and a former protective services worker, testified for the defense. She stated that on the night of the incident at the mall, she examined Jasmine and found no marks, bruises or swelling.

¶ 19. At the close of the evidence, the trial court again gave the jury the cautionary instructions about the other acts evidence the State introduced. The court also instructed the jury that because discipline of a child was an issue in the case, the State had to prove beyond a reasonable doubt that Kimberly did not act reasonably in disciplining Jasmine. The court then proceeded to give the standard jury instruction for the parental privilege of reasonable discipline. *See* WIS JI—CRIMINAL 950. The jury found Kimberly guilty of physical abuse of a child for whose welfare she was responsible, contrary to WIS. STAT. §§ 948.03(2)(b) and (5). Kimberly appeals from the judgment of conviction.

### *Sufficiency of the Evidence*

¶ 20. Kimberly argues that the evidence before the jury was insufficient to support her conviction for two reasons. She first seems to suggest that the evidence adduced at trial did not support two of the elements of the crime for which she was convicted. Next, Kimberly challenges the sufficiency of the evidence to negate her affirmative defense of parental privilege to use reasonable discipline. After setting forth the appropriate standard of review, we will address each of Kimberly's two sufficiency of the evidence contentions in turn.

¶ 21. *Standard of Review.* The test for reviewing the sufficiency of the evidence to support a verdict is whether the evidence, viewed most favorably to the

743

State and the conviction, is so lacking in probative value and force that no reasonable jury could have found guilt beyond a reasonable doubt. *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it. *Id.* Our consideration of the record includes even evidence which was erroneously admitted. *State v. Smith*, 2004 WI App 116, ¶ 32, 275 Wis. 2d 204, 685 N.W.2d 821, *review granted,* 2004 WI 123, 275 Wis. 2d 295, 687 N.W.2d 522 (Wis. Aug. 2, 2004) (No. 2003AP1698–CR).

¶ 22. *Sufficiency of the Evidence to Convict Kimberly of Physical Abuse of a Child.* The crime of physical abuse of a child, as applied to the matter at hand, requires proof beyond a reasonable doubt of the following three elements: (1) Kimberly caused bodily harm to Jasmine, (2) Kimberly intentionally caused such harm, and (3) Jasmine had not attained the age of eighteen years at the time of the alleged offense. *See* Wis JI— Criminal 2109. Additionally, for the penalty enhancer to apply, the State had to prove beyond a reasonable doubt that Kimberly was responsible for Jasmine's welfare at the time of the incident. *See* Wis. Stat. § 948.03(5).

¶ 23. Kimberly appears to challenge only the first and second elements of the crime of physical abuse of a child—that Kimberly caused Jasmine to suffer bodily harm and Kimberly intended to cause such harm. Kimberly points out that Jasmine testified at trial that on the day of the incident her mother did not hit her in the face or on the arm with an umbrella. Kimberly also

relies on the facts that in her original report to the police Albritton did not mention seeing visible injuries on Jasmine and that in Thomey's opinion Jasmine did not need medical treatment following the alleged incident. The State responds that the jury could have reasonably relied upon the other testimony presented at trial to reach its determination that the challenged elements of the crime of physical abuse of a child were satisfied beyond a reasonable doubt. We agree with the State and reject the first of Kimberly's sufficiency of the evidence challenges.

¶ 24. Underlying Kimberly's argument is the assumption that for the bodily harm element to be met, the harm to the victim must be severe enough that he or she receives some form of medical treatment. However, the definition of bodily harm for purposes of Wis. Stat. § 948.03(2)(b) contains no such requirement. Bodily harm is defined simply as "physical pain or injury, illness, or any impairment of physical condition." Wis JI—Criminal 2109; *see also* Wis. Stat. § 939.22(4); *State v. Higgs*, 230 Wis. 2d 1, 14–15, 601 N.W.2d 653 (Ct. App. 1999) (concluding that the element of "bodily harm" was established where the victim simply experienced a burning and stinging sensation in his eyes caused by contact with urine).

██

¶ 25. Two witnesses testified that Jasmine suffered some form of physical pain, injury or impairment on the date of the incident. Thomey testified that Jasmine had swelling underneath her eye and an abrasion and a bruise just below her eyebrow. She further observed that Jasmine's right arm had a handprint mark and an area where the skin was peeled back from being poked. Albritton, who witnessed the incident, noticed that one of Jasmine's eyes was bruised, red and

swollen and that she had welts and a hand mark on her arm. She also noted that a piece of skin was missing on the one arm. Although Albritton did not include her observations of Jasmine's injuries in her written report, she did testify that there were details of the incident that she left out of her statement. The jury was certainly well within its rights to adopt as credible this testimony of Thomey, a police officer, and Albritton, a member of the security staff, and reject the testimony suggesting Jasmine suffered no bodily harm from both Jasmine herself, a young child afraid of what might happen to her mother, and Smith, a longtime friend of Kimberly's. *See State v. Toy*, 125 Wis. 2d 216, 222, 371 N.W.2d 386 (Ct. App. 1985) ("It is the jury's task . . . not this court's, to sift and winnow the credibility of the witnesses. We review sufficiency of evidence claims most favorably to the jury's findings. It is certainly allowable for the jury to believe some of the testimony of one witness and some of the testimony of another witness even though their testimony, read as a whole, may be inconsistent." (Citations omitted.)).

¶ 26.  Furthermore, although Jasmine testified at trial that her mother did not hit her in the face or on the arm with an umbrella, four of the State's witnesses identified Kimberly as the cause of Jasmine's bodily harm on July 25. Albritton testified that she saw Kimberly punch Jasmine with a closed fist "about six times." Cobb reported that he saw Kimberly slap Jasmine two or three times with an open hand, and then punch Jasmine eight or nine times with a closed fist. Thomey testified that Jasmine had told her that her mother had slapped her on the hands, punched her all over and hit her with an umbrella. Phinisee testified that some time after the incident Jasmine indicated that her mother had hit her with a closed fist several

times and poked her with an umbrella. From the testimony of these witnesses, the jury could comfortably conclude that, contrary to Jasmine's trial testimony, Kimberly had been the cause of Jasmine's bodily harm. *See id.* (jury determines credibility of witnesses and resolves conflicts in testimony).

█

¶ 27. Finally, the intent element of WIS. STAT. § 948.03(2)(b) requires the State to prove that Kimberly had the mental purpose to cause bodily harm to Jasmine or was aware that her conduct was practically certain to cause that result. *See* WIS JI—CRIMINAL 2109. The jury was properly instructed in this case that it could determine Kimberly's intent directly or indirectly from all of the evidence, including Kimberly's own conduct and statements. *See id.*

¶ 28. The jury had before it evidence that Kimberly aggressively punched Jasmine with a closed fist anywhere from six to nine times. Indeed, Cobb said Kimberly took a full swing of her arm while punching Jasmine and Albritton reported that Kimberly punched Jasmine so hard that she actually heard the contact being made. The jury also heard Albritton's testimony that Kimberly was "consumed" by anger while she was punching Jasmine, even going so far as to call her a "big fat slut." Further, the other acts witnesses presented testimony demonstrating that Kimberly knew when her use of physical force would cause an unacceptable degree of bodily harm. According to the other acts witnesses, on two prior occasions in the name of discipline, Kimberly had "whooped" Jasmine so hard with a belt or an extension cord that they left marks and bruises on her body and prompted government intervention. From this evidence the jury could, with reason, infer that Kimberly had the mental purpose to cause

bodily harm to Jasmine or was, at the very least, aware that her use of physical force in the form of closed-fisted punching was practically certain to harm Jasmine. *See* WIS JI—CRIMINAL 2109.

■

¶ 29. *Sufficiency of the Evidence to Negate the Parental Privilege of Reasonable Discipline.* Pursuant to WIS. STAT. § 939.45(5), a person responsible for the welfare of a child, such as a parent, enjoys a privilege to reasonably discipline the child by use of physical force. Section 939.45(5)(b) provides that a parent's conduct is privileged:

> When the actor's conduct is reasonable discipline of a child by a person responsible for the child's welfare. Reasonable discipline may involve only such force as a reasonable person believes is necessary. It is never reasonable discipline to use force which is intended to cause great bodily harm or death or creates an unreasonable risk of great bodily harm or death.

This privilege constitutes an affirmative defense to a criminal charge of physical abuse of a child under WIS. STAT. § 948.03. *See* § 939.45 ("The fact that the actor's conduct is privileged, although otherwise criminal, is a defense to prosecution for any crime based on that conduct."). Once parental privilege is raised as an affirmative defense, the burden shifts to the State to disprove the parental privilege defense beyond a reasonable doubt. *See State v. Trentadue,* 180 Wis. 2d 670, 674, 510 N.W.2d 727 (Ct. App. 1993) (citing *State v. Stoehr,* 134 Wis. 2d 66, 84 n.8, 396 N.W.2d 177 (1986)).

■

¶ 30. While WIS. STAT. § 939.45(5) recognizes the right of a parent to inflict corporal punishment to correct or discipline a child, that right of parental

discipline has its limits. Kimberly seems to suggest that the statute prohibits only force that is "intended to cause great bodily harm or death" or that "create[s] an unreasonable risk of great bodily harm or death." However, we agree with the State that the plain language of § 939.45 requires that (1) the use of force must be reasonably necessary; (2) the amount and nature of the force used must be reasonable; *and* (3) the force used must not be known to cause, or create a substantial risk of, great bodily harm or death. If parental conduct fails to satisfy even one of these prongs, then the parent is not protected by the privilege. Thus, to overcome the privilege of parental discipline in Wisconsin, the State must prove beyond a reasonable doubt that only one of these three prongs is not present.

¶ 31. Here, the State concedes that a reasonable jury could find that it was reasonably necessary for Kimberly to use physical force to discipline Jasmine in the Kenosha mall parking lot on the day in question. Jasmine admitted that she had been "acting out" in the mall, pulling merchandise off shelves and hitting another child in her group. The State instead maintains that there was sufficient evidence for the jury to conclude that the amount and nature of the force Kimberly used was excessive and unreasonable under the circumstances. We agree and reject the second of Kimberly's sufficiency of the evidence challenges.

¶ 32. Reasonable force is that force which a reasonable person would believe is necessary. WIS JI—CRIMINAL 950. Whether a reasonable person would have believed the amount of force used was necessary and not excessive must be determined from the standpoint of the defendant at the time of the defendant's acts. *Id.* The standard is what a person of ordinary intelligence

and prudence would have believed in the defendant's position under the circumstances that existed at the time of the alleged offense. *Id.*

¶ 33.   "The test of unreasonableness is met at the point at which a parent ceases to act in good faith and with parental affection and acts immoderately, cruelly, or mercilessly with a malicious desire to inflict pain, rather than make a genuine effort to correct the child by proper means." *State v. Thorpe*, 429 A.2d 785, 788 (R.I. 1981). There is no inflexible rule that defines what, under all circumstances, is unreasonable or excessive corporal punishment. *Id.* Rather, the accepted degree of force must vary according to the age, sex, physical and mental condition and disposition of the child, the conduct of the child, the nature of the discipline, and all the surrounding circumstances. *See* WIS JI—CRIMINAL 950.

¶ 34.   Here, the jury had before it evidence that Kimberly meted out aggressive physical punishment in response to Jasmine's misbehavior inside of the mall. According to Albritton's and Cobb's testimony, Kimberly first slapped Jasmine and then proceeded to verbally abuse and punch Jasmine, who was nine years old and confined inside a minivan, with a closed fist anywhere from six to nine times. Their testimony also reveals that Kimberly was "out of control" with anger when she assaulted Jasmine—refusing to relent despite Jasmine's pleas.

¶ 35.   The jury heard testimony establishing that Jasmine sustained multiple visible injuries as a result of Kimberly's actions. According to Albritton and Thomey, Kimberly's actions left an abrasion, a bruise, a swelled eye, and welts and a handprint mark on Jasmine. Common sense would have informed the jury that

750

Kimberly's punches and slaps to Jasmine's face and body could have caused far more serious injuries.

¶ 36. Finally, the jury had before it evidence from which it could have inferred that Kimberly was aware of when her use of physical force against Jasmine exceeded acceptable norms. The testimony of the other acts witnesses established that Kimberly on two prior occasions had used physical force sufficient to cause visible marks and injuries and to require official intervention.

¶ 37. Given the evidence before the jury concerning the aggressive nature of the physical punishment, the actual injuries sustained and Kimberly's demeanor and prior knowledge, the jury could reasonably conclude that Kimberly was not making a genuine effort to discipline Jasmine by proper means for her inappropriate behavior in the mall and that she instead was resorting to excessive and unreasonable force, abusive rather than corrective in nature. Because there was sufficient evidence to support this determination, the jury properly rejected Kimberly's affirmative defense of parental privilege of reasonable discipline.

### Other Acts Evidence

¶ 38. Kimberly also seeks a new trial on the ground that the trial court erred in admitting the other acts evidence that on two prior occasions Kimberly had hit Jasmine with an extension cord or a belt, leaving marks and bruises that prompted government intervention. We review a trial court's decision to admit evidence under a discretionary standard. *State v. Veach*, 2002 WI 110, ¶ 55, 255 Wis. 2d 390, 648 N.W.2d 447. The question on review is not whether this court would

have allowed admission of the evidence in question. *Id.* Instead, if the trial court "examined the relevant facts; applied a proper standard of law; and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach," we will affirm its decision. *Id.* (citation omitted).

¶ 39.   The analysis of other acts evidence culminated in our supreme court's delineation of a three-step analytical framework for attorneys and courts to follow in determining whether other acts evidence is admissible. *Sullivan*, 216 Wis. 2d at 771–72.

> (1) Is the other acts evidence offered for an acceptable purpose under WIS. STAT. § (Rule) 904.04(2), such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident?
>
> (2) Is the other acts evidence relevant, considering the two facets of relevance set forth in WIS. STAT. § (Rule) 904.01? The first consideration in assessing relevance is whether the other acts evidence relates to a fact or proposition that is of consequence to the determination of the action. The second consideration in assessing relevance is whether the evidence has probative value, that is, whether the other acts evidence has a tendency to make the consequential fact or proposition more probable or less probable than it would be without the evidence.
>
> (3) Is the probative value of the other acts evidence substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence? *See* WIS. STAT. § (Rule) 904.03.

*Sullivan*, 216 Wis. 2d at 772–73 (footnote omitted).

¶ 40. Here, the trial court concluded that the other acts evidence was relevant and admissible to prove the intent element of WIS. STAT. § 948.03(2)(b) and to disprove Kimberly's reasonable discipline defense by showing "the absence of mistake or accident" regarding "the kind of knowledge that [Kimberly] brings to the question of parental discipline." We agree. The testimony that Kimberly, in an attempt to discipline Jasmine, had resorted on at least two prior occasions to striking Jasmine with force sufficient to cause visible physical injuries and require government intervention tended to show that Kimberly also intended to cause physical injury to Jasmine when she was allegedly disciplining her in the mall parking lot. From the evidence that the police and other officials had been called to investigate prior occasions where Kimberly had physically harmed Jasmine, the jury could reasonably infer that Kimberly knew when her use of physical force against Jasmine was an unreasonable and excessive form of punishment. Thus, the evidence of the prior disciplinary acts suggests that it is more probable than not that Kimberly intended to cause physical harm to Jasmine that exceeded acceptable norms for instructive discipline.

¶ 41. Additionally, the trial court concluded that the probative value of the evidence was not substantially outweighed by any unfair prejudice. Again, we agree. The probative value of other acts evidence depends on its nearness in time, place, and circumstance to the crime alleged. *State v. Speer*, 176 Wis. 2d 1101, 1117, 501 N.W.2d 429 (1993). As explained, the other acts evidence was highly relevant to prove that Kimberly intentionally caused bodily harm to Jasmine and to disprove Kimberly's defense of reasonable discipline.

Here, although the other acts episodes were several years apart, the episodes involved the same child, similar injuries and similar claims of parental discipline for similar types of purported child misbehavior, and each required some form of government intervention. Moreover, the trial court minimized any risk of unfair prejudice to Kimberly by its jury instructions. The court instructed the jurors *four separate times*—before each of the three other acts witnesses testified and again in its final instructions—that they could not consider the other acts evidence to conclude that Kimberly was of bad character or had acted in conformity therewith to commit the charged crime. Such cautionary instructions "eliminate or minimize the potential for unfair prejudice." *State v. Hammer*, 2000 WI 92, ¶ 36, 236 Wis. 2d 686, 613 N.W.2d 629; *see also State v. Grande*, 169 Wis. 2d 422, 436, 485 N.W.2d 282 (Ct. App. 1992) (jurors are presumed to follow such cautionary instructions). Accordingly, the trial court's determination that the other acts evidence should be admitted had a reasonable basis and the trial court did not erroneously exercise its discretion.

### *Conclusion*

¶ 42. In summary, we hold that sufficient evidence supported Kimberly's conviction for intentionally causing bodily harm to a child, contrary to Wis. Stat. §§ 948.03(2)(b) and (5). We further affirm the trial court's decision to admit the other acts evidence because it satisfied all three prongs of the three-part *Sullivan* test for admissibility.

*By the Court.*—Judgment affirmed.