**FOR PUBLICATION**



**FILED**

Mar 26 2012, 8:22 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LEAH S. CANNON**
Law Office of Deborah M. Agard
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| LAVERN CEASER, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | )  No. 49A02-1106-CR-580 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

**APPEAL FROM THE MARION SUPERIOR COURT**
The Honorable Teresa A. Hall, Master Commissioner
Cause No. 49G16-0901-FD-9739

**March 26, 2012**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Lavern Ceaser appeals her conviction for Class D felony battery on her daughter, M.R. Ceaser contends that the trial court erred by allowing the State to present evidence regarding her prior conviction for battering M.R. Ceaser also contends that the trial court erred by denying her motion to dismiss and that evidence at trial was insufficient to rebut her claim of parental privilege. We conclude that Ceaser's prior conviction for battering the same child in a manner similar to the underlying incident was admissible under the intent and lack of accident or mistake exceptions to Indiana Evidence Rule 404(b). We further conclude that the trial court properly denied Ceaser's motion to dismiss and the evidence at trial was sufficient to rebut her claim of parental privilege. We affirm.

**Facts and Procedural History**

The facts most favorable to the verdict are as follows. In April 2006, Ceaser was convicted of Class A misdemeanor battery on a child, her seven-year-old daughter, M.R. M.R. was removed from her mother's care after the battery and then returned to Ceaser in January 2008. In November 2008, M.R., now nine, returned home from elementary school. Ceaser instructed M.R. to perform her chores, which included cleaning the living room. M.R. asked her mother if she could wait until her sister came home to clean the living room because they had dirtied the room together. Ceaser gave M.R. permission to wait for her sister. M.R. went to her room and fell asleep. A short time later, Ceaser entered M.R.'s room and asked M.R. why she had not cleaned the living room. M.R. stated that she thought Ceaser had given her permission to wait for her sister. Ceaser left

2

the room and returned with the cord from a video game controller.[1]  Ceaser used the cord to repeatedly strike M.R., who was wearing a shirt and khaki pants at the time.  Ceaser struck M.R. on the arms, back, legs, and bottom.  M.R. stated that the beating lasted as long as fifteen minutes and caused her pain.  M.R. screamed, cried, and flailed her arms and legs while her mother struck her.

At school the next day, M.R. was still in pain.  She showed her teacher welts from the beating.  The teacher notified the local Department of Children and Family Services ("DCS") and Steffie Roberts, a family case manager, came to the school to speak with M.R.  M.R. showed the marks to Roberts and described being beaten with the cord.  Roberts concluded that the marks were consistent with M.R.'s account of the beating.  Tr. p. 275.  DCS filed a petition alleging M.R to be a Child In Need of Services ("CHINS") and removed M.R. from Ceaser's home.[2]  In January 2009, the State charged Ceaser with Class D felony battery on a child.

At trial, the State sought to introduce evidence of Ceaser's 2006 conviction for battering M.R.  Specifically, the State sought to introduce evidence that Ceaser whipped an unclothed M.R., who was then seven years old, with a belt.  M.R. sustained swelling and bruising to her face and other parts of her body and was taken to the emergency room.  The State also sought to introduce evidence that M.R. was wearing only

---

[1] Ceaser contends that she used a belt to beat M.R.  However, both M.R. and the DCS caseworker testified that the object was a video-game controller.  In deference to the verdict, we adopt the testimony of the child and the caseworker for purposes of our analysis.

[2] The CHINS petition also referenced M.R.'s younger sister, M.S., who is not at issue in this appeal.

undergarments at the time of the beating, as well as Ceaser's statements that her actions were wrong and that she should have simply talked to M.R. or walked away. *Id*. at 77.

At a hearing on the issue of the admissibility of Ceaser's 2006 conviction, the court ruled that the State could not use evidence of the conviction in its case-in-chief but could use the evidence for rebuttal purposes if Ceaser relied on the defense of parental privilege. The trial court limited the evidence of Ceaser's prior conviction, permitting references only to the misdemeanor conviction, not the initial felony charge, that the victim in both instances was M.R., that Ceaser used an object to whip M.R., and that M.R. sustained injuries to her face and body. *Id.* at 77-78. All other evidence of the prior conviction was excluded.

Before trial, but after the filing period provided by Indiana Code section 35-34-1-4(a)(5), Ceaser filed a motion to dismiss.[3] The trial court denied Ceaser's motion to dismiss under Section 35-34-1-4(a)(5) as untimely but heard evidence on Ceaser's motion to dismiss under Section 35-34-1-4(a)(11). Ceaser testified that M.R. had been lying about her homework and had not performed her chores and that she had tried other forms of discipline before beating M.R. with the cord. The State cross-examined Ceaser but due to its failure to timely file a witness list, the State was not permitted to offer evidence to rebut Ceaser's testimony. Following the hearing, the trial court denied Ceaser's motion under Section 35-34-1-4(a)(11). The trial court explained that there

---

[3] This motion is not included in the record. For our purposes we rely on Ceaser's description of her motion: "with her motion, [Ceaser] tendered her sworn affidavit containing the facts surrounding her exercise of parental privilege, along with her memorandum stating specifically the legal question at issue as required by the statute." Appellant's Br. p. 5.

4

were facts in dispute and noted that Ceaser intended to assert the defense of parental privilege, which was an issue to be determined by the trier of fact. *Id.* at 41.

A jury trial was held. The trial court ruled that Ceaser's opening statement opened the door to allow the State to introduce evidence of Ceaser's 2006 conviction. *Id.* at 207. The State elicited this evidence from Detective Robert Chappell, who testified that in the course of investigating the 2008 incident, he discovered that Ceaser had been convicted in 2006 for battering M.R. *Id.* at 321. In addition to testimony from Detective Chappell, the trial court also heard testimony from M.R., DCS caseworker Roberts, and M.R.'s elementary-school teacher.

At the close of the prosecution's case, Ceaser moved for judgment on the evidence, arguing that the State had not met its burden of disproving her claim of parental privilege. The trial court denied the motion, stating that because the parental-privilege claim was an affirmative defense, Ceaser was required to present evidence regarding that defense.

Ceaser testified that in the weeks preceding the 2008 beating, M.R. lied about her homework and had not been keeping her bedroom clean. *Id.* at 344. She said that she tried disciplining M.R. for this behavior in various ways, which were not successful. *Id.* at 346. During the beating, Ceaser stated that she struck a crying M.R. seven or eight times, perhaps more. *Id.* at 346, 361. When asked about the 2006 beating, Ceaser indicated that she lost control and in addition to beating M.R., she slapped her. *Id.* at 348. Ceaser stated that although she did not believe her behavior in 2006 was reasonable, she felt the force used on M.R. in 2008 was reasonable. *Id.* at 361, 363-64.

5

The jury found Ceaser guilty of Class D felony battery on a child. The trial court sentenced Ceaser to 545 days with 544 days suspended to probation and one day's credit. *Id.* at 463. Ceaser now appeals.

**Discussion and Decision**

Ceaser raises three issues on appeal. First, she contends that the trial court erred by allowing the State to present evidence regarding her 2006 conviction for battering M.R. Ceaser argues that this evidence was inadmissible and that its probative value was outweighed by its prejudicial effect. Second, Ceaser argues that the trial court erred by denying her motion to dismiss under Section 35-34-1-4(a)(11), as the facts alleged by the State did not constitute a crime. Third, Ceaser claims that the evidence at trial was insufficient to rebut her claim of parental privilege. We address each of these contentions in turn.

**I. Admission of Prior-Misconduct Evidence**

We first address Ceaser's challenge to the admission of evidence regarding her prior conviction for battering M.R. Ceaser argues that this evidence was inadmissible because it bore no relation to any of the admissible purposes listed in Indiana Evidence Rule 404(b), such as intent, knowledge, or absence of mistake. Even if the evidence was admissible under one of these exceptions, Ceaser argues, its probative value was substantially outweighed by its prejudicial effect. Both Ceaser and the State correctly note that we have yet to address this evidentiary issue in the context of parental discipline.

A trial court has broad discretion in ruling on the admission or exclusion of evidence. *Kimbrough v. State*, 911 N.E.2d 621, 631 (Ind. Ct. App. 2009). The trial court's ruling on the admissibility of evidence will be disturbed on review only upon a showing of an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Id.* Error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected. Ind. Evidence Rule 103.

Indiana Evidence Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Evidence Rule 404(b) tracks Federal Rule of Evidence 404(b) almost verbatim. *See Hicks v. State*, 690 N.E.2d 215, 218 & n. 1 (Ind. 1997) (noting that the federal rule also includes "opportunity" in its short list of permissible purposes). The rule is designed to prevent the jury from assessing a defendant's present guilt on the basis of his propensities—the so-called "forbidden inference." *Id.* at 218-19. Prior misconduct may be admissible to prove motive, intent, or other material facts at issue in a case. *Id.* Rule 404(b)'s list of permissible purposes is illustrative but not exhaustive. *Id.*

In assessing the admissibility of Rule 404(b) evidence, a trial court must (1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence

7

Rule 403. *Embry v. State*, 923 N.E.2d 1, 8 (Ind. Ct. App. 2010) (citing *Wilson v. State*, 765 N.E.2d 1265, 1270 (Ind. 2002)), *trans. denied*. Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."

Initially we note that the "admissibility of evidence of other crimes, wrongs, or acts to establish intent and an absence of mistake or accident is well established, particularly in child abuse cases." *United States v. Harris*, 661 F.2d 138, 142 (10th Cir. 1981). "Where a parent uses severe corporal punishment, often the only way to determine whether the punishment is a non-criminal act of discipline that was unintentionally harsh or whether it constitutes the felony of child abuse is to look at the parent's history of disciplining the child." *State v. Wright*, 593 N.W.2d 792, 802 (S.D. 1999) (citing *Taylor v. State*, 701 A.2d 389, 396 (Md. 1997)). Victims of child abuse are often unable or unwilling to testify against a parent who has abused them. *Id.* For this reason, a parent's other disciplinary acts may be the most probative evidence of whether the corporal punishment at issue was imposed "maliciously, with an intent to injure, or with a sincere desire to use appropriate corrective measures." *Id.*

Courts of other jurisdictions have held that evidence of past violence toward a child is relevant to show intent and lack of mistake or accident. *Id.* at 801; *see also Taylor*, 701 A.2d at 396; *State v. Kimberly B.*, 699 N.W.2d 641, 652 (Wis. Ct. App. 2005). In *Wright*, a father punched his son, banged his head against the wall, and whipped and kicked him. The father claimed that his actions were justified as parental discipline in response to his son's dangerous misbehavior. The trial court admitted

8

evidence of two prior acts of violence by the father, one against the son and another against his daughter. Wright was convicted, and the Supreme Court of South Dakota affirmed, framing the issue as one of "punishment—was it cruel or abusive?" *Id.* at 802. The court held that the father's prior disciplinary acts were "highly relevant to [his] state of mind." *Id.* Jurors could infer, based on the evidence of prior violence, that the alleged discipline was unreasonable, not necessary, and "merely part of an overall plan or design to abuse his children when given any provocation." *Id.* The evidence was also relevant, the *Wright* court held, to show absence of mistake or accident based on the father's claim that his mental state at the time of the discipline was influenced by his son's dangerous conduct. *Id.*

In *Taylor*, in separate incidents, the defendant punched his stepson, used a cord to whip him, poked him with a sharp stick, and stabbed him with a fork. 701 A.2d at 390-91. The cases were consolidated after the trial court ruled that the evidence of each instance of abuse was admissible in each trial to show intent, malice, and absence of mistake. *Id.* at 391. The stepfather was convicted, and the Court of Appeals of Maryland affirmed. The court surmised that the defense's position was either that the child had fabricated claims of abuse or that the injuries resulted from "permissible disciplinary acts, not child abuse or battery." *Id.* Because the child at issue bore physical evidence of the violence against him, "the central issue in the case seemed to be whether the blows exceeded permissible parental discipline," making intent to cause physical injury and malice important elements of the prosecution's case. *Id.*

Likewise, the Court of Appeals of Wisconsin ruled that evidence of past violence toward a child was admissible under the intent exception in *Kimberly B.* In *Kimberly B.*, a mother repeatedly struck her nine-year-old daughter in a shopping center parking lot with a closed fist, telling her to shut up and calling her a "big fat slut." 699 N.W.2d at 644. At trial, the State introduced evidence that mother had twice previously beaten the child with a belt or extension cord, leaving visible injuries and requiring state intervention. The court upheld the use of the evidence, calling it "relevant and admissible to prove the intent element" of the jurisdiction's parental discipline statute and "to disprove Kimberly's reasonable discipline defense by showing 'the absence of mistake or accident' regarding 'the kind of knowledge that [Kimberly] brings to the question of parental discipline.'" *Id*. at 651-52. Specifically, the jury could infer, based on the evidence of prior beatings, that "Kimberly knew when her use of physical force against [her daughter] was an unreasonable and excessive form of punishment." *Id.* This evidence, the court stated, suggested that it was more probable than not that Kimberly intended to "cause physical harm to [her daughter] that exceeded acceptable norms for instructive discipline." *Id.*

In this case, in order to convict Ceaser for battery where the defense of parental privilege was asserted, the State was required to prove either: (1) the force Ceaser used was unreasonable or (2) Ceaser's belief that such force was necessary to control M.R. and prevent misconduct was unreasonable. *Willis v. State*, 888 N.E.2d 177, 182 (Ind. 2008). Mistake or accident is inherent in the requirement that the State prove a parent had an unreasonable belief that a particular level of force was necessary. Put differently, the

10

State is required to prove that a parent was mistaken about what force was necessary. Where, as here, a parent asserting parental privilege has a prior conviction for battering the child at issue in a manner similar to the circumstance at issue, that evidence goes directly to the reasonableness of the force used and the reasonableness of that parent's belief regarding the force used. Here, a jury could infer based on Ceaser's prior conviction for battering M.R. that Ceaser knew what level of physical force exerted against M.R. was unreasonable. The evidence was admissible under the lack of accident or mistake exception to Rule 404(b).[4]

The evidence is also relevant to Ceaser's intent. Contrary to Ceaser's claim, the intent underlying parental discipline and battery are not the same. *See Taylor*, 701 N.E.2d at 396 ("a parent's other disciplinary acts can be the most probative evidence of whether his or her disciplinary corporal punishment is imposed *maliciously, with an intent to injure*, or with a *sincere desire to use appropriate corrective measures*.") (emphases added). Discipline is defined as "punishment intended to correct or instruct." *Black's Law Dictionary* 270 (8th ed. 2004). A parent who disciplines a child in a physical manner intends to correct or alter their child's behavior. That corrective intent is lacking in a battery. In order for evidence of previous crimes to be admissible to show intent to commit the instant crime, the defendant must place his or her intent at issue. *Reeves v. State*, 953 N.E.2d 665, 670 (Ind. Ct. App. 2011) (citing *Moore v. State*, 653 N.E.2d 1010, 1017 (Ind. Ct. App. 1995)). Ceaser has done so here. By arguing that she

---

[4] Our reference to Ceaser's knowledge of the reasonableness of the level of force illustrates the close relation between the lack of accident or mistake and knowledge exceptions in this context. Because we conclude that the evidence was admissible under the lack of accident or mistake and intent exceptions, however, we need not address the admissibility of the prior misconduct evidence under the knowledge exception.

11

exercised her parental privilege in disciplining M.R., Ceaser necessarily represents that her intent was to correct M.R.'s behavior through corporal punishment, rather than to simply batter her daughter. The evidence of Ceaser's 2006 conviction was also admissible under the intent exception to Rule 404(b).

Although we conclude that the evidence of Ceaser's past violence toward M.R. was admissible under the intent and lack of accident or mistake exceptions, it may still have been inadmissible under the last part of the 404(b) test if its probative value was substantially outweighed by the danger of unfair prejudice pursuant to Evidence Rule 403. The trial court is afforded wide latitude in weighing probative value against prejudice under Rule 403. *Freed v. State*, 954 N.E.2d 526, 531 (Ind. Ct. App. 2011). We will reverse the court's evaluation and decision to admit or exclude only upon a showing of an abuse of discretion. *Id.* Trial courts may consider a broad range of factors in balancing probative value against the risk of unfair prejudice, including the similarity between the past crime and the charged crime. *Saunders v. State*, 848 N.E.2d 1117, 1123 (Ind. Ct. App. 2006), *trans. denied*.

In both beatings, Ceaser whipped the same child, M.R., with objects—a belt in one instance and a cord in the other. In both instances, visible marks were left on M.R.'s body. The beatings were also close in proximity, occurring in 2006 and 2008, with the 2008 beating taking place less than a year after M.R. was returned to Ceaser's care. The trial court limited the evidence of Ceaser's prior conviction, permitting references only to the identity of the victim, the location of the victim's injuries, and the use of an object to

12

inflict those injuries.  Other facts surrounding the 2006 beating, including statements made by Ceaser, were excluded.

We acknowledge that the potential for unfair prejudice was tangible here because the prior misconduct involved violence toward a child.  However, we conclude that the trial court did not err in finding that the probative value was not outweighed by the threat of unfair prejudice given its direct relation to Ceaser's claim of parental privilege, the similarity and proximity of incidents, and in light of the limitations imposed on the use of the evidence.

## II. Motion to Dismiss

We next consider Ceaser's claim that the trial court erred by denying her motion to dismiss as the facts alleged by the State did not constitute an offense.  We review a trial court's denial of a motion to dismiss for an abuse of discretion.  *State v. Durrett*, 923 N.E.2d 449, 453 (Ind. Ct. App. 2010).  We therefore reverse only where the decision is clearly against the logic and effects of the facts and circumstances.  *Id.*  The purpose of Indiana Code section 35-34-1-8, which governs the dismissal of charging informations, is to establish facts that aid in a determination of whether an offense has properly been charged against the defendant as a matter of law.  *State v. Isaacs*, 794 N.E.2d 1120, 1122 (Ind. Ct. App. 2003) (citing *State v. King,* 502 N.E.2d 1366, 1369 (Ind. Ct. App. 1987)).  Facts that may be raised under Section 35-34-1-8 generally concern only pretrial matters.  *Id.*  Questions of fact to be decided at trial or facts constituting a defense are not properly raised by a motion to dismiss.  *Id.*  However, an information may be dismissed if the facts stated in the information do not constitute an offense.  Ind. Code § 35-34-1-4(a)(5).

13

The trial court denied Ceaser's motion to dismiss under Section 35-34-1-4(a)(5) as untimely but heard evidence on Ceaser's motion to dismiss under Section 35-34-1-4(a)(11). Though the State cross-examined Ceaser, due to a failure to timely file a witness list, the State did not offer evidence to rebut Ceaser's testimony. Following the hearing, the trial court denied Ceaser's motion under Section 35-34-1-4(a)(11). The trial court noted that there were still facts in dispute and that Ceaser intended to rely on the defense of parental privilege, which was an issue for the jury.

Though Ceaser failed to provide her motion to dismiss in her appellate materials, we note her description of it: "with her motion, [Ceaser] tendered her sworn affidavit containing the facts surrounding her exercise of parental privilege, along with her memorandum stating specifically the legal question at issue as required by the statute." Appellant's Br. p. 5. From Ceaser's own description we conclude that she moved to dismiss the information at least in part based on the defense of legal authority; that is, parental privilege.

Ceaser claims she was entitled to dismissal under *State v. Fettig*, 884 N.E.2d 341 (Ind. Ct. App. 2008) (Kirsch, J., dissenting), *reh'g denied*, *trans. not sought*. More specifically, Ceaser argues that under *Fettig*, a trial court has the discretion to determine whether parental privilege is a defense to a charge of battery on a child. In *Fettig*, a teacher was charged with battery after slapping a student. The teacher filed a motion to dismiss, which the trial court granted. The State appealed, arguing that whether the teacher's actions constituted reasonable corporal punishment was an issue that must be decided at trial. The majority relied on three Supreme Court decisions from 1888, 1879,

14

and 1894, holding that "[the cases] demonstrate the ability of the judiciary to determine whether a teacher has acted within the bounds of her authority to discipline when striking a student." *Id.* at 345-46. The dissent, however, emphasized the unresolved factual issues and the need to resolve those issues at trial. The dissent also noted the significant changes in the world since the nineteenth century. *Id.* at 346.

We agree with the dissent in *Fettig*. Whether an individual has a statutory defense to the charges in an information goes beyond the issues that may be decided by a motion to dismiss and instead is a matter to be decided at trial. *See Isaacs*, 794 N.E.2d at 1123. Ceaser's claim that she was entitled to dismissal in light of recent case law is not persuasive as her claim of parental privilege was an issue for the jury. The trial court did not err in denying Ceaser's motion to dismiss.

### III. Sufficiency of the Evidence

The standard of review for a challenge to the sufficiency of the evidence to rebut a claim of parental privilege mirrors the standard for any sufficiency claim. *Willis*, 888 N.E.2d at 182-83. We do not reweigh evidence or judge the credibility of witnesses. *Id.* If there is sufficient evidence of probative value to support the conclusion of the trier of fact, we will affirm the verdict. *Id.*

To convict Ceaser of battery with injury to a child, the State was required to prove beyond a reasonable doubt that she knowingly or intentionally touched a person less than fourteen years of age in a rude, insolent, or angry manner and that touching resulted in bodily injury. Ind. Code § 35-42-2-1(a)(2)(B). But Ceaser asserts the defense of parental discipline pursuant to Indiana Code section 35-41-3-1, which provides: "A person is

15

justified in engaging in conduct otherwise prohibited if he has legal authority to do so."

In *Willis*, our Supreme Court set forth the requirements for the parental privilege, holding that "[a] parent is privileged to apply such reasonable force or to impose such reasonable confinement upon his [or her] child as he [or she] reasonably believes to be necessary for its proper control, training, or education." 888 N.E.2d at 182 (quoting Restatement of the Law (Second) Torts, § 147(1) (1965)). The following factors are relevant to a court's determination of whether the punishment at issue is reasonable:

> (a) whether the actor is a parent;
> (b) the age, sex, and physical and mental condition of the child;
> (c) the nature of his offense and his apparent motive;
> (d) the influence of his example upon other children of the same family or group;
> (e) whether the force or confinement is reasonably necessary and appropriate to compel obedience to a proper command;
> (f) whether it is disproportionate to the offense, unnecessarily degrading, or likely to cause serious or permanent harm.

*Id.* In addition to this non-exhaustive list of factors, the unique facts of a particular case should be considered. *Id.* In order to convict a parent for battery where parental privilege is asserted, "the State must prove that either: (1) the force the parent used was unreasonable or (2) the parent's belief that such force was necessary to control her child and prevent misconduct was unreasonable." *Id.*

Ceaser's arguments on appeal, which attempt to minimize the harm to M.R. and insist that Ceaser's behavior was not excessive but rather justified and distinguishable from prior cases involving parental discipline, are merely an invitation to reweigh the evidence, which we may not do. The jury heard evidence that Ceaser beat then-seven-year-old M.R. in 2006, M.R. was removed from the home after that beating, and Ceaser

16

was ultimately convicted of battering M.R. The jury also heard evidence that in 2008, Ceaser beat nine-year-old M.R. for as long as fifteen minutes with a video game controller cord for failing to perform chores and lying about homework. This beating caused M.R. pain and left welts on her back, arms, legs, and buttocks. These marks were still painful and visible the following day when M.R. reported the beating to her teacher. This evidence is sufficient to support the jury's conclusion that the State disproved the parental-privilege defense.

Affirmed.

ROBB, C.J., and NAJAM, J., concur.