

**FILED**

Jan 17 2018, 9:03 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer A. Joas
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Casey L. Hill, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | January 17, 2018 <br><br> Court of Appeals Case No. <br> 40A04-1707-CR-1697 <br><br> Appeal from the Jennings Circuit Court <br><br> The Honorable Jonathan W. Webster, Judge <br><br> Trial Court Cause No. <br> 40C01-1701-F6-1 |

**Altice, Judge.**

## Case Summary

[1] Casey L. Hill appeals his conviction for Level 6 felony intimidation. On appeal, he contends that the trial court admitted evidence of his subsequent bad acts in violation of Indiana Evidence Rule 404(b).

[2] We affirm.

## Facts & Procedural History

[3] Hill began a relationship with Jennifer Malott in 1999. They lived together for a number of years and have two children together. Malott moved out with the children in the fall of 2015 after Hill battered her. Thereafter, Malott and Hill continued to see each other occasionally and even lived together again for a few months in 2016. Hill's physical abuse of Malott escalated during this time from hitting to "choking, knives, being held at gunpoint." *Transcript Vol. 2* at 159. Malott's tactic became trying to calm Hill down and do what he wanted when he became upset with her.

[4] In December 2016, Hill was living with friends – the Miller family – in Danville, and Malott and the children were living with her cousin in Hayden. At Hill's urging, Malott made arrangements so that Hill could spend time with the children at Christmas. They stayed together with the children at a hotel in Greenwood from December 24 through December 26. When Malott received a message on her phone on Christmas morning, Hill became jealous and demanded to see the phone. Malott refused, resulting in Hill holding a knife to her and throwing her against a wall. Despite this, Malott drove Hill and the children to Danville that evening to visit with the Millers. An argument broke out between Hill and Malott on the Millers' front porch at some point that evening. A neighbor called the police believing that Hill struck Malott. After

the police came and went, the Millers informed Hill that he could no longer live with them. Malott, Hill, and the children returned to the hotel.

[5] After checking out on the morning of December 26, Malott drove Hill back to Danville. They waited for several hours because Hill was locked out of the Millers' residence. Malott eventually drove Hill to his half-brother Richard Sealy's home in Commiskey. Richard and his wife Suzanne observed that Hill was in an agitated state when he arrived that evening. Malott briefly informed Richard of the recent abuse while Hill was outside retrieving his belongings from the vehicle. Richard asked Hill later about the abuse, and Hill indicated that nothing had happened.

[6] As Malott drove back to Hayden that night with the children, Hill began calling and arguing with her on the phone. Eventually, Malott stopped answering her phone. Hill then sent Malott the follow text messages:

> [9:31 p.m.] I see you don't have anything to talk to me about…
>
> [9:37 p.m.] Nothing at all?? Thanks
>
> [9:39 p.m.] Every time I need you, your [sic] never there for me
>
> [9:50 p.m.] Im [sic] on my way there now walking down the road see you in a Lil bit

*Exhibit Vol.*, State's Exhibit 1. Malott responded that she was done fighting and that they would talk tomorrow, and Hill replied:

[9:56 p.m.]   You will own up to it right before I cut your throat,..answer your phone

[9:57 p.m.]   No talking bitch..im [sic] walking there now

[10:06 p.m.]   Know.  I will take your. [sic] Life if you don't own up to what you have done you have till the morning to do so you fucking bitch..you have fucked me for the last time

[10:11 PM]   Your [sic] dead bitch

*Exhibit Vol.*, State's Exhibits 1 and 2.  Hill was angry because Malott would not admit that she was responsible for him being kicked out of the Millers' home.

[7]   Malott became concerned as a result of these threatening messages and Hill's relatively close proximity, so she went to the Jennings County Sheriff's Department that night.  Sergeant Allen Ritchie took photographs of the messages and urged Malott to file charges, but she refused.  Malott indicated that "she just wanted this incident and everything documented in case something did happen to her." *Transcript Vol. 2* at 98.

[8]   Hill continued to send threatening messages to Malott after December 26 and have angry conversations with her over the phone.  After some of these conversations, the Sealys overheard Hill make reference to cutting Malott's throat.  On one occasion, Hill said, "I will die a happy man knowing she will not be the mother to my children". *Id.* at 174.

[9] Late at night on December 29, 2016, Hill posted on his Facebook page: "Anybody have a firearm they want to trade for some ink? Pm me". *Exhibit Vol.*, State's Exhibit 3. Malott went to the sheriff's department the next day to report this post and request the filing of charges.

[10] In the early evening of January 3, 2017, Hill sent Facebook messages to Malott stating, "im [sic] coming after you today...get ready...You going to die bitch." *Exhibit Vol.*, State's Exhibit 4. Hill also warned that he was currently walking to her house. Malott contacted the police regarding these messages.

[11] After walking approximately seventeen miles from Commiskey to Hayden, Hill showed up at Jeffrey Stidham's house around 10:00 p.m. Stidham was a father figure to Malott. Hill was distraught and indicated that Malott was driving him crazy. Stidham tried to console Hill, but Hill walked off stating, "I have to kill her." *Transcript Vol. 2* at 167. Stidham immediately contacted the sheriff's department and Malott's mother. Shortly thereafter, Hill was arrested near Malott's residence.

[12] The State charged Hill with Level 6 felony intimidation based on the threats he made to Malott on December 26, 2016. At his jury trial in May 2017, Hill unsuccessfully sought to exclude any evidence of his bad acts/threats that occurred between December 27, 2016 and January 3, 2017. The jury found Hill guilty as charged, and the trial court sentenced him to eighteen months in the Jennings County Jail. Additional facts will be provided below as needed.

## Discussion & Decision

[13]  Hill contends that the trial court abused its discretion by admitting evidence of subsequent bad acts in violation of Evid. R 404(b). Specifically, he challenges the admission of any statements/threats made by him after December 26, 2016, the date of the charged crime.

[14]  We review evidentiary rulings for an abuse of discretion, which will be found where the ruling is clearly against the logic and effect of the facts and circumstances. *Zanders v. State*, 73 N.E.3d 178, 181 (Ind. 2017), *cert. pending*. On issues of relevance and unfair prejudice, a trial court's discretion is wide. *Snow v. State*, 77 N.E.3d 173, 176 (Ind. 2017).

[15]  Evid. R. 404(b)(1) prohibits admission of evidence of a crime, wrong, or other act, whether prior or subsequent to the charged crime, when the evidence is used to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character. *See id.*; *see also Southern v. State*, 878 N.E.2d 315, 321-22 (Ind. Ct. App. 2007), *trans. denied*. Such evidence, however, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid. R. 404(b)(2).

[16]  In assessing the admissibility of evidence under Evid. R. 404(b), the trial court must: (1) determine whether the evidence is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403. *Ceaser v. State*, 964 N.E.2d 911, 915 (Ind. Ct. App. 2012),

*trans. denied.* Under Evid. R. 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

[17] In this case, the State was required to prove that on or about December 26, 2016, Hill communicated a threat to Malott to commit a forcible felony with the intent that Malott be placed in fear of retaliation for a prior lawful act. *See* Ind. Code § 35-45-2-1; *Appellant's Appendix Vol 2* at 24. Hill conceded at trial that he threatened Malott that he would cut her throat and kill her. There also appears to be no dispute that he was angry with her because, among other things, she would not answer her phone and "own up to" causing him to be unwelcome at the Millers' residence. *Exhibit Vol.*, State's Exhibit 1. Hill's express defense was that Malott was good at pushing his buttons and "what he said on the 26th was all talk." *Transcript Vol. 3* at 76. In other words, his defense amounted to a claim that although he threatened Malott, he did not really intend for her to be placed in fear of retaliation.

[18] Hill first placed his intent at issue during opening statements when counsel, after noting that Malott had a history of pushing Hill's buttons, argued:

> They're going to have to prove that he had the intent that she be placed in fear of retaliation for a prior lawful act. And we don't believe that the State can prove this thing. The State is going to be able to prove that he said those things, those came from his phone and when he testifies he's going to say I said those things and *he's going to explain why*. But as to the other elements, the intent, placing her in fear for retaliation for a prior act we don't believe the State can prove those beyond a reasonable doubt[.]

*Transcript Vol. 2* at 91-92 (emphasis supplied). During his later testimony, Hill explained, "She knows I wasn't going to do anything like that. She knows that, all talk, that's how I am when I get shitty." *Transcript Vol. 3* at 61.

[19] The record establishes that Hill placed his intent at issue, which made evidence of his subsequent actions/statements admissible to establish his intent on the night in question. *See Wickizer v. State*, 626 N.E.2d 795, 799 (Ind. 1993) (intent exception available only when defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent); *Christian-Hornaday v. State*, 649 N.E.2d 669, 671-72 (Ind. Ct. App. 1995) (defendant placed intent at issue when during opening statement defense counsel acknowledged that identity was not at issue but stated that whether defendant made the call with the intent to annoy or harass the victim was at issue), *abrogated on other grounds by Hicks v. State*, 690 N.E.2d 215 (Ind. 1997).

[20] Hill argues that even if the evidence of his subsequent bad acts was admissible to show intent, "its prejudicial nature substantially outweighed the probative value of the evidence by the sheer volume of evidence presented after the crime". *Appellant's Brief* at 13. He claims that the volume of evidence regarding his subsequent acts "would have mislead and confused the jury by diverting their attention away from the actual charges being presented." *Id*. at 15.

[21] As set forth above, Hill's defense was that he did not intend to place Malott in fear of retaliation and that he was just blowing off steam. His actions in the eight days following his threats to kill Malott, however, imply otherwise.

Indeed, Hill continued his threats to kill Malott and openly expressed them to others, inquired on Facebook about trading his tattoo skills for a gun, and later walked seventeen miles to confront Malott with the stated intention of killing her. Hill was fortunately arrested before reaching Malott on January 3, 2017. These facts were relevant to determining the intent behind the threats he made on December 26, 2016, and we cannot agree that such evidence was unduly prejudicial or likely to mislead or confuse the jury. Accordingly, the trial court did not abuse its discretion by allowing this evidence over Hill's objection.

[22] Judgment affirmed.

May, J. and Vaidik, C.J., concur.